M. D. Tyler, appellee, v. Mary J. Winder, appellant.

Filed May 23, 1911.   No. 16,447.

Husband and Wife: Contracts of Married Women: Employment of Attorney. A married woman who has no separate estate may employ an attorney to begin and prosecute or defend an action for divorce, and make a valid contract to compensate the attorney for his service in such action.

Appeal from the district court for Madison county: Anson A. Welch, Judge. *Affirmed.*

*John W. Cooper,* for appellant.

*Mapes & Hazen* and *Allen & Dowling, contra.*

Sedgwick, J.

The defendant employed the plaintiff as an attorney at law to defend her in an action for divorce brought against her by her husband. The plaintiff brought this action to recover the value of his services rendered in that employment. The cause was tried in the district court for Madison county without a jury, and a judgment entered for the plaintiff. The defendant has appealed.

A motion was made in this court to dismiss the appeal, but, as we are satisfied that the judgment is right upon the merits, we prefer to place our decision upon that ground. It appears that when the divorce proceedings were begun this defendant had no property or estate in her own right. The defense is coverture. It is insisted that as the defendant had no property at the time of the employment she could not have incurred liability with reference to her separate property, trade and business, or upon the faith and credit thereof. The construction of the married woman's act of 1871 and amendments thereto has several times been before this court, but the precise question here involved has not perhaps been before considered. In the early case of *Webb v. Hoselton,* 4 Neb.

308, which was decided in 1876, it was determined that a note given by a married woman and secured by a mortgage on her separate estate was a valid obligation; and that case is followed in *Davis v. First Nat. Bank*, 5 Neb. 242, and *Gregory v. Hartley*, 6 Neb. 356, and many later cases. In *Grand Island Banking Co. v. Wright*, 53 Neb. 574, and *Kocher v. Cornell*, 59 Neb. 315, it was held that, when a married woman signs a note as surety, it must be made to appear that she did so intending to charge her separate estate. In the latter case the fifth and sixth paragraphs of the syllabus are: "The contract of a married woman can only be enforced against the separate estate which she possessed at the date of the contract. A mere hope of succession to an estate is not property." In considering the enforcement of a general contract of surety, and in determining whether in making such a contract the intention was to bind the separate property of a married woman, these paragraphs of the syllabus may be considered appropriate. *Farmers Bank v. Boyd*, 67 Neb. 497; *Northwall Co. v. Osgood*, 80 Neb. 764, and cases there cited are decided upon similar principles. In *Northwall Co. v. Osgood, supra*, the defendant, a married woman, was sued upon a note which she signed at the request of her husband, and which was given in payment for a gasoline engine purchased by her husband, in which she had no interest. This court has frequently decided that in such cases, and in all cases where a married woman has signed as surety or in any way for the benefit of another, and not in her own business or for her own purposes, there is no presumption that she agreed thereby to bind her separate estate or property. In *Kocher v. Cornell, supra*, it is held that when a married woman signs a note as surety, and has no separate estate or property at the time of signing it will be presumed that she did not contract with reference to her property or business.

If she has rights to protect or enforce, and makes contracts reasonably appropriate to enforce or protect them, the case is entirely different. The cases cited do not de-

termine that choses in action are not property, nor that actions brought to establish rights in property should not bear their own expenses. We are not aware that this court has ever decided that a married woman may not employ an attorney to establish for her a right in property, and create a personal liability in so doing. Such questions are interesting, since the advance of civilization and changed conditions of society have produced so much legislation enlarging the rights and responsibilities of married women. This case, however, largely depends upon the provisions of the statute providing for the action in which the service was rendered. Section 12, ch. 25, Comp. St. 1909, is as follows: "In every suit brought, either for a divorce or for a separation, the court may in its discretion require the husband to pay any sum necessary to enable the wife to carry on or defend the suit during its pendency; and it may decree costs against either party, and award execution for the same; or it may direct such costs to be paid out of any property sequestered, or in the power of the court, or in the hands of a receiver." This is an exact duplicate of a section of the Michigan statutes. The statute has been construed by the court of that state in *Wolcott v. Patterson,* 100 Mich. 227, and other cases. The Michigan case cited was unlike the case at bar in one respect. The wife had a separate estate when she employed the attorney, but the reasoning of the court applies to the case we are considering. The court said: "We think the right to contract for such services is necessarily incident to and included in her right to bring suit." Shakespeare expressed a similar thought: "You take my life when you do take the means whereby I live." The statute gives her the right to bring an action for divorce in her own name, and provides that the costs may be adjudged against her. The court may under certain circumstances require the husband to pay all costs, including attorney's fees for both parties. If, however, the husband is worthless, and the wife has no property, the action is denied her, unless she is allowed the "means

whereby" she can maintain her suit. If she may bring an action to be released from a worthless husband, who has given her just cause, and she has the ability and energy to acquire means, why should she not be allowed to make such necessary contracts as she is confident she will be able to redeem? If the husband has property, and she is entitled to divorce and a share of that property, why should she not contract with reference to that property right? We agree with the Michigan court that "the right to contract for such services is necessarily incident to and included in her right to bring suit." There are many decisions which seem to hold a contrary doctrine. Among them are *Cook v. Walton,* 38 Ind. 228; *Wilson v. Burr,* 25 Wend. (N. Y.) 386; *McCabe v. Britton,* 79 Ind. 225; *Drais v. Hogan,* 50 Cal. 121; *Whipple v. Giles,* 55 N. H. 139, cited by defendant. Some of the authorities so holding are quite ancient and seem to be under the influence of the old common law rule Some are under statutes quite different from ours. In others which seem to be more nearly in point the reasoning is not as satisfactory as in the Michigan cases. They do not appear to us to be in harmony with the policy of our state as shown in its legislation.

We think the judgment of the district court is right, and it is

'AFFIRMED.

FAWCETT, J., dissenting.

I do not think the clause in the section of statute quoted in the majority opinion, viz., "and it may decree costs against either party, and award execution for the same," should be construed as enlarging the power of a married woman to contract for the payment of an attorney's fee in a divorce suit, so as to make her personally liable upon such contract. If at the time of instituting the suit she owned a separate estate, I concede that she might make a contract specifically charging such estate, but I do not think she is competent to then, while still under the disabilities of coverture, and not possessed of any separate

estate, make a contract which would bind her personally and render after-acquired estate liable for the satisfaction of such contract; and that this would be true whether such acquired estate be by inheritance (*Kocher v. Cornell,* 59 Neb. 315) or from an allowance by the court of alimony in a divorce suit. At the time of employing counsel to defend such suit, she would still be under the disabilities of coverture, without separate estate of her own and the estate from which the alimony is to be paid vested in her husband. Moreover, section 12, ch. 25, Comp. St. 1909, quoted in the majority opinion, recognizes the liability of the husband for the expenses of the wife in either prosecuting or defending a divorce suit. I think this statute not only recognizes the duty on the part of the husband to pay these expenses incurred by the wife, but also recognizes the further fact that the estate which is then vested in the husband is one in which the wife has a certain though inchoate interest, and that it would be unjust to deprive her of a sufficient amount of such community property to enable her to litigate with him the question as to whether or not he has violated the marriage contract. While I concede that the authorities are conflicting upon this point, I think the reasoning of *Cook v. Walton,* 38 Ind. 228, and the other cases in harmony therewith, cited in the majority opinion, state the better rule and should be followed.

The limitations upon the powers of a married woman to contract are founded upon reason and a sound public policy; and I cannot conceive of any case where her rights should be more jealously safeguarded than in a divorce suit. In such a case she has (or thinks she has) been grievously wronged by her husband. She is without means to employ counsel to assist her in obtaining her rights. Her husband has the title to and possession of all of their community estate. She appeals to a lawyer for assistance. He is familiar with the statutes and knows that he can protect himself by obtaining an order from the court requiring the husband to pay him a reasonable

attorney's fee in such divorce suit, and I do not think he should be permitted to refrain from thus protecting himself and then seek to recover from the wife a portion of the moiety awarded to her by the court as alimony. I think this never should be permitted, unless it clearly appears in the decree of the court that the alimony awarded to the wife is intended to include the services of her attorney. The clause in the majority opinion, "If, however, the husband is worthless, and the wife has no property, the action is denied her, unless she is allowed the 'means whereby' she can maintain her suit," does not appeal to me for the reason that, to the honor of our profession be it said, there is probably not a gentleman in the profession who would not come to the relief of such a woman in her extremity.

It is a well-known fact that in the larger cities the procuring of divorces is an "industry" on the part of a certain class of lawyers. The majority opinion would leave the women who had been caught in their nets at the mercy of these divorce sharks, as they would invariably demand from their clients a portion of the pittance awarded as alimony, as an attorney's fee, in addition to what may have been previously allowed by the court "as costs." It is true that in such a case, if the victim should apply to the court in which the case had been heard, it would promptly make the attorney disgorge the excess; but very few of such unfortunate women would know that any such avenue of escape from the extortion of their attorneys was open to them.

REESE, C. J., concurs in dissent.