FLORA M. MARSH ET AL., APPELLEES, V. EDITH V. MARSH ET AL., APPELLANTS.

FILED OCTOBER 18, 1912.     No. 16,891.

1. Wills: CONSTRUCTION. When there are definite and unambiguous expressions in a will, other expressions that are capable of more than one meaning must be so construed, if reasonably practicable, as to harmonize with the plain provisions of the will.

2. ———: ———: "LEGAL REPRESENTATIVES." In wills and other written instruments, the words "legal representatives" are frequently used to mean the persons who succeed beneficially to the property or interest of the deceased. Whether in any given case they are so used, or the executor or administrator is intended, must be determined from a consideration of all of the provisions of the will.

3. ———: ———: "HEIRS AND LEGAL REPRESENTATIVES." The use of the expression, "heirs and legal representatives," instead of "heirs, executors and administrators," may, under some circumcumstances, raise the presumption that those who are beneficially interested and succeed to the property and rights of the decedent are intended.

4. Husband and Wife: DISPOSITION OF PROPERTY: REMOVAL OF DISABILITIES. Our statute has taken away the common-law power of a husband to dispose of his wife's property. A married woman has the same power to dispose of her property and property rights that a married man has to dispose of his.

5. ———: CONTRACTS OF MARRIED WOMEN. In this state the contract of a married woman must be with reference to her separate estate or property. If she provides in her contract that she intends to bind her separate estate thereby, without describing any

property or property rights, it binds only the property and estate which she has at the time of making the contract, and the proceeds thereof, or substitute therefor. If she assigns specific property or rights, such contract is "with reference to her separate estate."

6. **Quaere.** Whether a remainder limited to the heirs of one living at the time it is granted is assignable, *quære*.

7. **Husband and Wife:** Disabilities of Coverture: Assignment: Estoppel. The defense of coverture is based upon lack of power. When the power to act is entirely wanting, no estoppel can arise from an attempt to perform such act. But when a contingent interest in property is so remote as to be incapable of sale or assignment, an attempt to assign it upon adequate consideration and subsequent conduct continued until after the title of the assignor has become perfect, there being no lack of power, may create an estoppel to deny the validity of the assignment.

Appeal from the district court for Douglas county: Alexander C. Troup, Judge. *Reversed with directions.*

*Francis A. Brogan,* for appellants.

*T. J. Mahoney, H. C. Brome* and *William J. Coad,* contra.

Sedgwick, J.

William W. Marsh of Omaha died April 2, 1901, leaving an estate of about $625,000. He left a widow, Flora M. Marsh, and four sons, Charles, Frank, William, and Allan A. Marsh. Charles Marsh died in 1909. The defendant Edith V. Marsh is his widow, and the defendant Gertrude J. Marsh is their minor daughter. About a year before his death William W. Marsh executed a will, in which he appointed his widow and his four sons trustees of his estate, with large powers and discretion in the control and management thereof. The will was duly probated, and the trustees named assumed the trust and took control of and administered the estate. The plaintiffs Flora M. Marsh, Frank Marsh, William Marsh, and Allan

A. Marsh, as trustees under the will, brought this action in the district court for Douglas county to obtain a construction of the will. Charles Marsh, at the time of his death, was indebted to the defendant the United States National Bank of Omaha upon several promissory notes, and the bank answered in the action, and alleged that to secure this indebtedness Charles Marsh had assigned to the bank his interest in the estate of his father, and that the defendant Edith V. Marsh had joined in the assignment, and the bank asked that the administratrix of the estate of Charles Marsh be required to pay the claim of the bank out of the estate of Charles Marsh. Edith V. Marsh contested the right of the bank under the assignment, and contended that, as Charles died before January 1, 1910, he had no interest to assign, and that her assignment was void because of her coverture, and because her interest was contingent and not assignable.

The will contained the following provisions:

"Third. All the residue and remainder of my estate, both real and personal, of every kind and nature whatsoever, and not heretofore given and bequeathed to my beloved wife Flora M. Marsh, I hereby give and bequeath in trust in manner and for the purposes, to wit: To my wife Flora M. Marsh, Charles Marsh, Frank Marsh, William Marsh and Allan A. Marsh, my sons, I give and bequeath all of said residue and remainder of my estate, both real and personal, in trust, to be held and managed by them as trustees, until the first day of January, A. D. nineteen hundred and ten (1910), hereby authorizing and empowering them to invest, re-invest and keep said property so that it will produce an annual income, using their best judgment and care in the management thereof, and in the discharge of said trust, I hereby authorize and empower my said trustees, while they shall have and hold said residue and remainder or any part thereof in trust as aforesaid, to sell, convey and dispose of the same or any part thereof at public or private sale, at such times and upon such terms and conditions, and in such a manner as

to them shall seem best and proper, and to re-invest the proceeds of such sale or sales in other property or securities to be held by them upon the terms and conditions of said trust, hereby authorizing and empowering my said trustees to make any, all and any deeds, conveyances and transfers, and execute the same, judged by them necessary and proper to carry out the purposes of this trust or their duties as such trustees. And I further direct and authorize that it shall not be essential for said trustees to act unanimously, but a majority of said trustees are authorized and empowered to do any and all acts and to execute any and all powers required to be done in said trust, and in the event that either or any of said trustees shall resign, die, or for any cause fail to accept this trusteeship, then in such case the majority of such of said trustees as are then acting as trustees at the time any act or thing is done or performed, may do or perform said act or thing as fully and legally as all of said trustees could or might do or perform the same unanimously."

"Sixth. After paying all expenses and all taxes and other charges including the payments to be made to my sister Stella M. Champlin, and my beloved wife Flora M. Marsh, I will and direct that the balance of the rents, profits and income annually derived from said property so held in trust, shall be divided equally between my said wife Flora M. Marsh, Charles Marsh, Frank Marsh, William Marsh and Allan A. Marsh, and in the event of the death of either of my said sons, his part shall go to his heirs or legal representatives as provided by the laws of the state, and said balance of said income so to be divided and paid to my said wife and sons under this sixth division of my will shall be paid quarterly."

"Eighth. I will and direct that on the first day of January, A. D. 1910, all of said property held in trust, as aforesaid, shall vest in and be disposed of as follows, to wit: To my sister, Stella M. Champlin, if she shall then be living I give the use of and income of ten thousand dollars during her natural life, the said income to be

paid to her annually, and for the purpose of carrying out this gift and provision to my said sister, I direct that my said trustees shall invest the sum of ten thousand dollars ($10,000) in some suitable investment the income thereof to be paid annually to her as above directed, and the payments to her of the annual sum of six hundred dollars hereinbefore directed shall cease and be at an end on January 1st, 1910.

"Ninth. I will and direct that all of my estate both real and personal and so held in trust, by my said trustees, shall vest in and go, on the said first day of January, nineteen hundred and ten (1910), subject to the provisions for my sister Stella, in the eighth division of this my last will and testament as follows, to wit:  To my beloved wife Flora M. Marsh, I give and bequeath an undivided one-fifth part of said property, absolutely and in her own right; to my beloved son Charles Marsh, I give and bequeath an undivided one-fifth part of said property, absolutely and in his own right; to my beloved son Frank Marsh, I give and bequeath an undivided one-fifth part of said property, absolutely and in his own right; to my beloved son William Marsh, I give and bequeath an undivided one-fifth part of said property, absolutely and in his own right; and to my beloved son Allan A. Marsh, I give and bequeath an undivided one-fifth part of said property, absolutely and in his own right.  Should my beloved wife Flora M. Marsh not be living at the time of my death I will and direct that the property given and bequeathed to her in second division of this will shall go to my said trustees to be held in trust upon the terms and conditions of the other property held in trust and shall go at the expiration of said trust to wit, January 1st, 1910, as the other property goes, except such as may be worn out or consumed in the use or become worthless by age, and loss, to my said sons.  And I further will and direct that if either or any of my sons shall not be living at my death to take under this will, then I give and be-

queath that part of the income going to him or them, to his or their heirs and legal representatives to go as provided by law. And at the death of my sister Stella on or after the first day of January, A. D. 1910, the said ten thousand dollars shall go as follows: I will and direct that said ten thousand dollars shall be equally divided between my wife and sons in the same manner and under the same conditions as the said residue and remainder on the said January 1st, A. D. 1910.

"Tenth. I will and direct that the title and ownership to said property devised in this last will and testament in trust shall not vest in my said wife and sons or either of them, except as trustees, until the 1st day of January, A. D. 1910. And in the event that my said wife or either or any of my said sons shall die prior to the 1st day of January, A. D. 1910, then in such case the property or that part thereof that would have gone to her, him or them shall go to her, his or their heirs and legal representatives according to law as the case may be."

"Twelfth. I will and direct that at the expiration of this trust, January 1st, A. D. 1910, said trustees shall turn over to the parties then entitled thereto the property which such persons are entitled to, and in the discharge of the duties under this trust I direct that no bond be required of either or any of said trustees, as I rely upon the sound discretion and good faith of each and all in the performance of their duties herein."

It is said in the briefs that three principal questions are presented: First, would the bequest to Charles Marsh vest in him an estate in his lifetime and subject to his debts, or was his interest under the will contingent upon his living until the 1st day of January, 1910? Second, if the estate was contingent and, he having died before that time, was not subject to his debts, who took the estate under the terms of the will, his wife and child as his heirs, or the administrator of the estate as his legal representative? Third, if his widow and child took the estate as his heirs, did the interest of the widow, Edith V.

Marsh, go to the bank under the assignment which she executed?

The trial court held, under the first proposition, that the estate of Charles Marsh was a contingent one, and, under the second proposition, that under the terms of the will it went to the administrator of the estate of Charles Marsh, and directed that it be applied by the administrator to the payment of his debts. From this decree the defendants Edith V. Marsh and Gertrude J. Marsh have appealed.

It must be conceded that the questions thus presented to this court are not free from difficulty. There is a variety of expressions in the will apparently bearing upon the matters in dispute, and, if taken literally as such words are ordinarily used, they appear in some instances to be inconsistent.

1. We are inclined to agree with the trial court upon the first proposition determined. The object is to ascertain, if possible, the purpose and meaning of the testator. When there are definite and unambiguous expressions in a will, other expressions that are capable of more than one construction must be so construed, if reasonably practicable, as to harmonize with the plain provisions of the will. The statement in the eighth paragraph of the will, "that on the first day of January, A. D. 1910, all of said property held in trust, as aforesaid, *shall vest in and be disposed of* as follows, to wit:" and in the next paragraph the words, "shall vest in and go, on the said first day of January nineteen hundred and ten (1910) * * * as follows, to wit: * * * to my beloved son Charles Marsh, I give and bequeath an undivided one-fifth part of said property, absolutely and in his own right," and also in the tenth paragraph, "I will and direct that the title and ownership to said property devised in this last will and testament in trust shall not vest in my said wife and sons or either of them, except as trustees, until the 1st day of January, A. D. 1910," appear to be positive and unequivocal, and no doubtful or ambiguous expressions should be allowed to

override them. The language quoted above from the tenth paragraph of the will appears to have been used for the express purpose of determining this question. The title to the property, it is of course conceded, is vested in the trustees named in the will; and to leave no question of his intention the testator says that not only this title but the ownership of the property shall not vest in his wife and sons or either of them, except as trustees, until the time fixed in the will for that purpose.

2. The next question presented is a more difficult one. Charles having died before the property vested in him, who took the property under the terms of the will? In the able and exhaustive argument presented upon both sides of this question, it is made to turn largely upon the construction of the words "legal representatives" in the tenth paragraph of the will: "In such case the property or that part thereof that would have gone to her, him or them shall go to her, his or their heirs and legal representatives according to law as the case may be." In statutes, contracts and wills, the words "legal representatives" are undoubtedly more often than otherwise used to designate the executors of the will or the administrators of the estate. These words are, however, frequently used to designate the party or parties who succeed to the property or interests of the deceased, who stand in his place, and so represent his rights. In what sense these words were used in this will must be determined from a consideration of all of the provisions of the will. The income of the property, by the sixth paragraph of the will, was to be distributed as it accrued to the beneficiaries named, and it was provided that, "in the event of the death of either of my said sons, his part shall go to his heirs or legal representatives as provided by the laws of the state." The use of the conjunction "or" in this provision and the conjunction "and" in the corresponding provision in paragraph 10 was apparently inadvertent, and has no significance.

In the first place, if the testator had intended that, in

the event of the death of one of the beneficiaries before the property vested in him, it should go to his executor or his administrator, it would have been easy, and perhaps natural, to have used those words instead of the words "legal representatives." The testator appears to have had confidence in his sons; they are made trustees, and the power and discretion given them in the use and control of the property is but very little restricted. They were not required to give bond, and, if some of them became disqualified or declined to act, no others were to be selected in their places. Under the provision of this will, Charles might have become sole trustee without bond. The object of placing this property in trust is stated in the will, and is for business purposes to keep the estate intact and enhance the value; but the sole purpose of the tenth paragraph of the will is to prevent the estate from vesting in the beneficiaries until the specified time, and to provide for the contingency of the death of one or more of the beneficiaries before that time. We cannot discover any purpose that could have been in the mind of the testator in inserting this tenth clause in his will that would not be effectually thwarted by providing that, in case of the death of one of the beneficiaries before the time specified, his share should go to the executor or administrator of his estate. In construing this tenth paragraph of the will, we are required, if possible, to give some meaning to the words "according to law as the case may be." The right of succession to the property of decedents is regulated by statute. These statutes determine the person to whom the property shall descend. Changes in that regard are not infrequent; indeed, radical changes have been introduced into our law since the execution of this will and the death of the decedent, in regard to the persons entitled to inherit and the manner of descent of property. If the testator intended that, in the event of the death of his son within the time stated, his portion of the property should go to the persons to whom the law, as it existed at the termination of the trusteeship, would give it, under the cir-

cumstances and conditions that should then exist, the words "according to law as the case may be" might have been used for that purpose. No other use for these words has been suggested.

Some of the conditions and surrounding circumstances at the time of the execution of the will might indicate a different intention on the part of the testator. As an illustration of this last thought, it may be noted that Charles was indebted to his father in a considerable amount at the time of the making of the will and continuously until his father's death. Did the testator intend that, in case of Charles' death before the 1st day of January, 1910, his portion of the property should go to his widow and children, and his indebtedness to his father's estate should remain unpaid? If the relations between Charles and his father had been those of ordinary debtor and creditor, this suggestion would have weight. Mr. Marsh, after the execution of the will, advanced money to Charles with which to meet his existing liabilities, and perhaps for speculative purposes, and, although he took Charles' note for the amount so advanced, it is not clear whether he expected to enforce collection of the note, or regarded it as substantially a gift to his son. At all events, the circumstance that he made no provision for the collection of the note in the remote contingency of the death of his son before he came into his inheritance is not of sufficient weight to determine the question presented. The briefs contain exhaustive and admirable arguments upon both sides of this question, and, if time would permit, it would be interesting to pursue the discussion further, but in the end the solution of the riddle would still be in doubt, and no good purpose served by prolonging this opinion. If our construction of the will is somewhat technical, it must be conceded that there is no substantial basis for a broader construction.

We have concluded that the necessary construction of the will as a whole, under all of the circumstances, is that it gave the share which Charles would have taken, if he

had lived to the time specified, to the persons to whom, at that time, it would descend under the law as it should then be.

3. Charles Marsh assigned his interest in certain securities belonging to the estate to secure an indebtedness now held by the defendant bank. His wife, Edith V. Marsh, joined in the execution of the assignment, which contained the following provision: "I, Edith V. Marsh, do hereby consent to join in the above assignment, it being understood that said assignment is of all interest, present and prospective, actual or contingent, of either said Charles Marsh or myself in or to said bonds." Also to secure the same indebtedness, they executed another assignment covering both the income that was coming to Charles Marsh and his interest in the principal of the property in the hands of the trustees. This assignment provided: "The intention hereby being to assign so much of the income and principal due, or to become due to either of the undersigned in the assets of said estate, whether present or future, actual or contingent, to fully pay and satisfy the interest and principal of the aforesaid notes." It is contended that these assignments were ineffectual to transfer the interest of the defendant Edith V. Marsh in the estate. The first contention in this regard is that, Edith V. Marsh being then a married woman, she was incompetent to convey such interest. The first and second sections of our married women's act (Comp. St. 1911, ch. 53) are as follows:

"Section 1. The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and any real, personal, or mixed property, which shall come to her by descent, devise or the gift of any person except her husband, or which she shall acquire by purchase or otherwise, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband, or liable for his debts"—with a proviso as to family necessaries.

"Section 2. A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property."

Formerly at the common law the personal property of a married woman was subject to sale and disposal by her husband. The first section of the act above quoted took this power over the personal property of the wife away from the husband. The language of the section is broad enough to cover any interest whatever that the wife might have in any property. As the power to dispose of property must exist, it is manifest that the intention of the legislature in these two sections was to transfer the power of disposal of the wife's property from the husband to the wife, and we have no doubt that under our statutes a married woman may dispose of her property "to the same extent and with like effect" as a married man may dispose of his. *Levi v. Earl,* 30 Ohio St. 147; *Ankeney v. Hannon,* 147 U. S. 118, and similar cases were decided under statutes very different from ours. Some of the language used in those cases, and apparently relied upon here, is not applicable.

The question frequently arises whether the contract of a married woman has reference to her separate estate. If she provides in the contract that she intends to bind her separate estate, without describing it, it is usually construed to mean her separate estate at the time of entering into the contract, and property afterwards coming to her by gift or will, and not from her husband, is not affected by such contract. This was so held in *Lee v. Cohick,* 39 Mo. App. 672. The question was whether the contract of a married woman for legal services, with an agreement in general terms that the contract should bind her separate estate, but without describing or naming any property right or interest, would create an indebtedness that could be collected from after-acquired property. It was

held that it would not, and that is the meaning of the rule stated in the syllabus: "A married woman can by her contract only charge a separate estate held by her at the date of such contract, or the subsequent substitute therefor." If she executes a promissory note, and it is attempted to enforce it against her property generally, this question becomes important. It has been generally held by this court that, if a married woman has no separate property at the time of entering into a contract, it cannot be said that the contract is with reference to her separate estate; but, if she has an interest in property and contracts that interest to another, no such question arises. If she assigns the property right, the contract must be with reference to that right. In *Tyler v. Winder*, 89 Neb. 409, it was held: "A married woman who has no separate estate may employ an attorney to begin and prosecute or defend an action for divorce, and make a valid contract to compensate the attorney for his service in such action." In the opinion *Kocher v. Cornell*, 59 Neb. 315, and other cases are referred to, in which it is held that, "when a married woman signs a note as surety, and has no separate estate or property at the time of signing, it will be presumed that she did not contract with reference to her property or business." And it is said: "If she has rights to protect or enforce, and makes contracts reasonably appropriate to enforce or protect them, the case is entirely different."

The next contention is as to the character of the interest of Mrs. Marsh of which she attempted to dispose. Is such an interest assignable? Was the subject of this assignment property, or an interest in property that could be assigned? The testator was deceased at the time of the assignment. There was a portion of the estate that would go to the husband or wife if either of them lived until 1910. If the husband lived until that time, his assignment alone would be sufficient to transfer that portion. He had no interest that he could have assigned if he died before that time. The same condition existed in *Taylor*

*v. Taylor*, 118 Ia. 407.   In that case the will gave the
widow of the testator a life estate, and afterwards to his
son or his heirs.   The court construed this language to
mean that, if the son lived to the termination of the par-
ticular estate, the property went to him; but, if not, it
went to his heirs then living.   It was held that the will
gave the son a contingent remainder, which could not be
levied upon and sold on execution, but which was assign-
able.   Under the authority of this case, and indeed under
the authorities generally, there seems to be no doubt of
the validity of the assignment of Charles Marsh, so far as
any interest which he had in the property was concerned.
It was not necessary to consider whether the presumptive
heirs of the son of the testator had an assignable interest
in the estate.   There is in the opinion a quotation from
2 Washburn, Real Property (6th ed.) sec. 1557, p. 527,
in which that author says: "But if the contingency is
in the person who is to take, as where the remainder is
limited to the heirs of one now alive, there is no one who
can make an effectual grant or devise of the remainder."
If Edith V. Marsh had an assignable interest, it was be-
cause she was a presumptive heir of one alive at the time
of the grant; and, under this statement of Mr. Washburn,
it would seem that she could not make an effectual grant
of that interest.   The authorities, however, especially the
more recent ones, are not united on this proposition.   If
the rule is supported by the weight of authorities, we think
it ought not to be applied in this case.   The bank might
have enforced the assignment of Charles Marsh, so far as
it related to the income which he was receiving from the
estate.   The indebtedness continued for many years, but
the bank renewed it from time to time on the strength of
these assignments.   The interest in the estate described
in these assignments amounted to much more than the
claim of the bank, so that if these assignments were valid
the claim of the bank was amply secured.   By the execu-
tion of these assignments the collection of the claim was
postponed from time to time, and the husband enjoyed the

income from the estate which, but for its reliance upon these securities, the bank might have applied upon his indebtedness.

Our statute provides: "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Comp. St. 1911, ch. 73, sec. 50. If one sells an article of personal property of which he has no title or possession at the time, but a contingent right, and afterwards acquires the title and possession, he ought not to be allowed to urge his want of title at the time of his contract to enable him to avoid his contract. When Edith V. Marsh executed these assignments it was known by all parties that the right of her husband to assign this interest in the estate might be defeated, as it subsequently was, and she executed these assignments to supply this defect in her husband's right to convey. She knew that if the bank allowed them to enjoy the income from the estate it did so relying upon the validity of these assignments. She ought not now to repudiate them. But her counsel urges that the defense of coverture is the want of power, and that, where there is no power to contract, the attempt to do so will not constitute an estoppel, and it is so held in *Whitlock v. Gosson,* 35 Neb. 829, in which it is said: "Estoppel will not supply the want of power, or make valid an act prohibited by express provisions of law." If, however, we are right in the conclusion that married women have the same power to convey their real and personal property that married men have to convey theirs, then the invalidity of these assignments, so far as her interests are concerned, was not for want of power in her to convey; but, if they were invalid at all, it was because of the character of the thing attempted to be assigned. In such case the principle of estoppel applies in full force. We conclude that the interest of Edith V. Marsh in the funds in the hands of the trustees is subject to the claim of the defendant bank.

The judgment of the district court is reversed and the

cause remanded, with instructions to enter a decree in accordance with the view herein expressed.

REVERSED.

FAWCETT, J., took no part.

LETTON, J., concurring.

The question presented relates to an interest in certain specified personal property. I concur in the view that, under the terms of the will, the title to the bonds assigned never vested in Charles Marsh, but eventually passed by the will to his heirs and legal representatives. I also think the opinion correct as to the meaning of the words "heirs and legal representatives" in this will. The case of *Shackley v. Homer,* 87 Neb. 146, is easily distinguishable. The interest of Mrs. Marsh in the property was contingent upon the death of Charles Marsh before the time when the title would vest in him, and her survival. In equity such contingent interests in chattel property are both devisable and assignable. 1 Fearne, Remainders, 368, 548; *Higden v. Williamson,* 3 Cox's P. W. (Eng.) 131; *Scawen v. Blunt,* 7 Ves. Jr. (Eng.) *294; *Hinkle v. Wanzer,* 17 How. (U. S.) *353. This being the case, the contingent interest of Mrs. Marsh in the bonds passed by her assignment and became effectual by estoppel when the trust estate determined.