LENORA MARGRET BURNS, APPELLEE, V. JOHN CHARLES
BURNS, APPELLANT.

15 N. W. 2d 753

FILED OCTOBER 6, 1944.   No. 31748.

*Samuel L. O'Brien,* for appellant.

*Evans & Lee, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

Plaintiff was decreed a divorce from bed and board, with
custody of minor son, with $40 a month for support of

child and $35 a month for support of wife, and attorney's fees of $300, from which defendant appeals.

On July 16, 1943, plaintiff filed petition for separate maintenance, alleging that the parties were married in Broken Bow, Nebraska, on October 2, 1941; that defendant is a resident of Alliance, Box Butte county, Nebraska, and plaintiff is a resident of Broken Bow, Custer county, Nebraska; that as a result of said marriage a child, John Patrick Burns, was born to said parties on August 11, 1942, said child being in the custody and possession of defendant in Alliance.

Plaintiff alleges that she has at all times conducted herself toward defendant as a chaste, obedient and dutiful wife; that defendant has been guilty of extreme cruelty toward plaintiff; that he required her to live in an apartment above the apartment occupied by two of his sisters, and that said sisters have attempted to dominate her every act and interfered with her care and treatment of her child, and that defendant, by subterfuge and conniving with his sisters, had her taken to Omaha and examined by a psychiatrist, and caused plaintiff to be locked up in Clarkson Hospital and restrained of her liberty for several days, and then defendant took her to the State Hospital for the Insane at Ingleside, near Hastings, and procured her commitment by false testimony, where she was confined for 16 days until she was able to communicate with her foster father, P. J. Kelly, of Broken Bow, who had a habeas corpus action brought in the district court for Adams county, and on July 15, 1943, plaintiff was released from the hospital by the superintendent, and she immediately returned to the home of her foster father, P. J. Kelly, at Broken Bow, where she established her residence and intends to live in the future.

The plaintiff further alleges that she has been publicly humiliated and branded with the stigma of insanity, when in truth plaintiff has at all times been sane and of sound mind and possessed of usual and ordinary intelligence, all of which was well known to defendant; that the conduct of

defendant has created a great fear in the mind of plaintiff, and she is afraid he may do her bodily harm and injury, and that such cruel and inhuman treatment has utterly destroyed all the legitimate objects and purposes of matrimony and she is no longer able to live with defendant as his wife.

Plaintiff states that defendant is 22 years of age, able-bodied, healthy and strong, and earns a salary in excess of $200 a month, and that plaintiff and defendant have accumulated assets, and defendant is able to provide for plaintiff and for the care and maintenance of their child; that plaintiff is a fit and proper person to have the care and custody of the child, but is entirely without means to support herself or said child, and without means to prosecute this action. Wherefore, plaintiff prays that she may be divorced from the bed and board of defendant, that he be required to pay suit money and attorney's fees, that she be given custody of the son, with support for him, and recover suitable alimony from defendant, and for such other and further relief as justice and equity may require.

On August 14, 1943, the defendant filed answer, admitting the marriage, his residence in Alliance, and the birth of the child on August 11, 1942, that from Ingleside plaintiff went to the home of P. J. Kelly at Broken Bow, and denying the other allegations of the petition.

For further answer defendant alleges that shortly after their marriage the parties established their home in an apartment in Alliance; that after plaintiff left Hastings she went to the home of said Kelly and on the following day, without having acquired a residence in Broken Bow, filed her petition.

Defendant further alleges that several months after their marriage plaintiff became physically and mentally ill, and of her own volition consulted Dr. G. F. Johnston, who cared for her during her pregnancy and childbirth; that after her release from the hospital plaintiff showed mental disturbances and was unable to properly care for her baby, and defendant placed the baby in St. Joseph's Hospital in

Alliance, and as a result the child immediately gained in strength and is now well-nourished, strong and healthy.

The answer further alleges that on June 29, 1943, upon the suggestion of Dr. Johnston, defendant took plaintiff to Omaha, where she was examined and was admitted to Clarkson Hospital for observance and treatment; that thereafter, upon the doctor's advice, defendant took plaintiff to the state institution at Hastings, where she was examined and left for observation and treatment, and that the treatment was progressing nicely when interrupted by the malicious move of P. J. Kelly, who procured a writ of habeas corpus against the state institution and its officers, who released the plaintiff without a hearing and without notifying defendant.

Defendant also alleges that during plaintiff's stay in the Clarkson Hospital and in the state institution she wrote defendant friendly letters, and showed no desire to leave either the Clarkson Hospital or the hospital at Hastings, and defendant charges that P. J. Kelly has caused this family disruption, and alleges that the petition is not the voluntary act and deed of plaintiff, but was induced and caused to be filed by the aforementioned P. J. Kelly, and defendant prays that the action be dismissed. No reply was filed.

The decree states that trial occurred October 11 to 13, 1943, both parties appearing personally and by counsel. The court finds that defendant has been guilty of extreme cruelty, as alleged, that plaintiff was unlawfully deprived of her liberty and incarcerated in the State Hospital for the Insane at Ingleside, and that upon being released from such institution she immediately returned to Broken Bow and there established residence, and at the time this action was commenced she was a *bona fide* resident of Custer county, and intended to reside therein.

The court further finds that, in truth and in fact, plaintiff was perfectly sane and normal, but that defendant, by false statements and misrepresentations, induced plaintiff to accompany him from the Clarkson Hospital to the State Hospital for the Insane in Adams county, and there by de-

ceit, subterfuge and misrepresentations caused plaintiff to be committed and confined in said insane hospital at a time when plaintiff was perfectly sane and normal, and that such willful and malicious misconduct on the part of defendant amounted to extreme cruelty.

The court further finds that plaintiff is a fit and proper person to have the care and custody of the child; that defendant earns an annual income of $2,340, and that plaintiff is without any means of support and entirely dependent upon defendant for maintenance.

It is therefore considered, adjudged and decreed by the court that plaintiff be granted a divorce from the bed and board of defendant, and that she be awarded the custody of the minor child, subject to visitation by defendant; that defendant be ordered to pay the sum of $35 monthly for the support and maintenance of plaintiff and $40 for the support and maintenance of the child, or a total sum of $75 monthly, and that plaintiff be awarded all furniture and household effects in the home of the parties at Alliance, reserving from the award only the articles of personal clothing and personal pictures or effects of defendant; that defendant is ordered to pay the costs of the action, including the sum of $300 attorney's fees for the benefit of plaintiff.

Among the errors relied upon for reversal are the following: That the decree is contrary to law and to the evidence; that defendant's motion to dismiss should have been sustained at the close of the testimony; that the court was without jurisdiction to try the case in Custer county; that the alimony and attorney's fees, as well as the support for the child, are excessive; that defendant was prevented from having a fair trial by disturbances in the courtroom; that the court erred in overruling defendant's motion for a new trial.

We will first discuss the question of residence. Section 42-301, Comp. St. 1929, provides that "A divorce from the bonds of matrimony may be decreed by the district court of the county where the parties, or one of them, reside, * * * ." This language indicates that a wife may have a

residence in one county and her husband in another.

" * * * the district court has jurisdiction to grant a divorce in a proper case in any county where the parties, or one of them, reside" is said in *Williams v. Williams,* 101 Neb. 369, 163 N. W. 147, in which case it is stated in the text: "It is elementary and it is the universal rule that residence in a community is determined by the intention of the parties. * * * Defendant's argument that a wife cannot have a residence separate and apart from that maintained by her husband is not supported by statute nor by the authorities. * * * *McConnell v. McConnell,* 37 Neb. 57. *Eager v. Eager,* 74 Neb. 827, holds that the district court has jurisdiction 'to hear and determine an action for divorce in any county in the state where the parties, or one of them, reside.' The rule is generally recognized."

It is clear that many exceptions to the rule that the domicile of the wife is determined by that of her husband must obtain, and where the unity of the husband and wife is dissolved by the institution of divorce proceedings the wife's domicile may be separate and apart from that of her husband. See 9 R. C. L., sec. 8, p. 545.

Where the unity of the marriage relation is breached by the husband's misconduct, the wife may acquire a separate domicile. See 17 Am. Jur., sec. 47, p. 620.

In 1 Beale, Conflict of Laws (1935), sec. 28.3, p. 203, it is said: "Not only when the husband has been guilty of conduct that would justify a separation, but also in cases where the wife is living apart from the husband with his consent, she may claim a separate domicil."

The plaintiff's testimony is that she positively decided while confined in the Clarkson Hospital that she would never return to Alliance, and the trial judge, from a careful consideration of all the evidence, finds that when she returned to Broken Bow she did so with the intention of becoming a *bona fide* resident of Custer county, and we find that the trial court of that county had jurisdiction to try the case.

The defendant denies that the evidence of cruelty is suf-

ficient to establish grounds for a decree. The law is that whether or not an unsuccessful attempt of a husband to commit his wife to an insane asylum constitutes cruelty justifying a decree of divorce depends upon the evidence in each case. If such attempt was made in good faith, and from the best of motives, and with an honest and sincere belief that her mental condition required such confinement, such act would lack the essential elements which indicate cruelty.

On the other hand, it is the first duty of a loving husband to protect his wife. A neglectful, unsympathetic attitude toward a very young wife of highly nervous temperament, who has lost 30 pounds in weight since the birth of her baby, is rather indicative of a husband who is wanting in proper care for his wife. If, in addition, he questions her sanity, and without just cause takes her to a state asylum and there secures her confinement therein, it has been held that such act, with all the other facts in evidence, is sufficient to justify granting a decree. *Michels v. Michels,* 120 Me. 395, 115 Atl. 161, 18 A. L. R. 570; *Harrison v. Harrison,* 115 La. 817, 40 So. 232; 27 C. J. S., sec. 28, p. 558; *Berdolt v. Berdolt,* 56 Neb. 792, 77 N. W. 399; 19 C. J., sec. 95, p. 53. In the exhaustive case of *Newton v. Newton,* 1 Western Weekly Reports (1924) 999 (Manitoba), in which many English cases are reviewed, such conduct is held to constitute legal cruelty and be a ground for divorce from bed and board.

The trial court awarded the custody of this little two-year-old son to the mother, and nothing in the evidence indicates that this is not entirely proper and for the best interests of a child of tender years, which is the controlling consideration. *Swolec v. Swolec,* 122 Neb. 837, 241 N. W. 771; *Feather v. Feather,* 112 Neb. 315, 199 N. W. 533; *Dier v. Dier,* 141 Neb. 685, 4 N. W. 2d 731.

In the errors relied upon for reversal, it is charged that the alimony is excessive, as well as the support money for the child. A careful examination of the evidence leads us to the conclusion that the amounts fixed in the decree of

the trial court are reasonable, and justified by the facts, and should be sustained. *Yost v. Yost,* 143 Neb. 80, 8 N. W. 2d 686; *Lippincott v. Lippincott,* 141 Neb. 186, 3 N. W. 2d 207.

Objection is also made to the attorney's fees allowed. We believe the award complies with the rule that "Fees in a divorce case must be reasonable in amount, and can only be awarded after a careful examination into the nature of the case, the skill necessarily devoted to the preparation and presentation of the questions, the character and standing of the counsel, together with a consideration of the amount involved and the results obtained for the client." *Jensen v. Jensen,* 144 Neb. 857, 15 N. W. 2d 57. See, also, *Beatty v. Beatty,* 128 Neb. 258, 258 N. W. 461; *Tyler v. Winder,* 89 Neb. 409, 131 N. W. 592.

Finding no reversible error, the decree of the trial court is hereby affirmed.

AFFIRMED.