GERTRUDE PETTEGREW, APPELLANT, V. IVAN D. PETTEGREW, APPELLEE.

FILED APRIL 23, 1935. No. 29213.

784

*Ziegler & Dunn,* for appellant.

*H. T. White, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Paine and Carter, JJ.

Rose, J.

Gertrude Pettegrew, plaintiff, and Ivan D. Pettegrew, defendant, were married May 27, 1918. Plaintiff sued defendant for a divorce March 14, 1932, but withdrew her plea therefor and, by amended petition filed December 14, 1932, prayed for separate maintenance for herself and daughter, their only child, then three years of age, and for continued custody of her. It was alleged in the amended petition that defendant, without cause or provocation, deserted plaintiff October 30, 1930, and thereafter lived separate and apart from her, and that he had been guilty of extreme cruelty toward her prior to the desertion pleaded.

In an answer and cross-petition, defendant denied alleged desertion of plaintiff without cause, denied he had been guilty of extreme cruelty toward her, accused her of extreme cruelty toward him, giving details, and prayed for an absolute divorce from her and for the fixing of a reasonable sum for the support of plaintiff and the child. Upon a trial of the cause, the district court found that plaintiff was entitled to custody of the child and to support for both and ordered defendant to pay his wife $100 a month, but he was permitted to dismiss his cross-petition for a divorce without prejudice to a future action. The cross-petition was so dismissed and from the judgment reserving to defendant the privilege of relitigating his charges that plaintiff had been guilty of extreme cruelty she appealed.

On the record presented for review, should the judgment dismissing the cross-petition of defendant for a

divorce without prejudice to a new action be so modified as to prevent future litigation of the previously tried issues involving the charges of plaintiff's extreme cruelty toward defendant? That is the question presented for determination.

The position taken by plaintiff is that after the issues as to her alleged extreme cruelty toward defendant were fully tried, after the cause was submitted to the court and after a ruling thereon in her favor was announced from the bench, defendant presented a motion for permission to dismiss his cross-petition without prejudice to a future action and that the motion was improperly and erroneously sustained to the prejudice of plaintiff.

On the other hand, defendant confidently argued that the district court took the cause under advisement for further consideration, that a final decision had not been rendered when the motion was made, that it was within the discretion of the trial judge to sustain the motion and that he did so without any abuse of discretion.

The record of the decree recites that the cause was finally submitted to the trial court upon the evidence and arguments of counsel July 12, 1933, that the motion to dismiss the cross-petition was filed September 27, 1933, and that the decree was dated February 16, 1934. The bill of exceptions shows there was a hearing on the motion February 15, 1934, with counsel for both sides present. The final decree, however, had not been signed or entered on the court journal when the motion was filed, nor at the time of the hearing thereon, but the district judge stated, referring to the trial on the merits of the cause:

"The court at the close of the trial indicated that in its judgment the court was of the opinion that the proof of the cross-petitioner and the corroboration thereof was not sufficient to justify the court in granting a divorce to the cross-petitioner."

The same opinion was entertained by the trial judge when he ruled on the motion, because he then said from the bench:

"There was no evidence on the cross-petition to justify a divorce. The court is satisfied that no court could ever grant the defendant a divorce under the record."

The reasons for permitting defendant to relitigate what had already been tried and submitted for judgment was stated by the district judge as follows, when ruling on the motion:

"However, the matter before the court now, in its judgment, is discretionary with the court. If the parties involved are not able to be reconciled through the years, then there may come a time when a divorce might be desirable. And if it is ever heard again before a judge, it would seem to this court fair to both these parties to have the entire picture before the court. If the motion to dismiss is denied, then only a one-sided picture will be before the court, as I view it."

A preponderance of the evidence considered by the court below on the motion tends to prove the following facts: The cause was tried on its merits for three days, June 27, 28 and 30, 1933, and was argued and submitted July 12, 1933. Shortly thereafter the district court directed counsel for plaintiff to prepare a decree in her favor on her petition and against defendant on his cross-petition. A decree was accordingly prepared and delivered to the trial judge who said he would sign the decree within a short time, after notice to counsel for defendant in the presence of counsel for both sides in court. No action was taken on the decree until August 29, 1933, when the district judge notified counsel for plaintiff by letter that opposing counsel desired to file a motion to dismiss the cross-petition without prejudice to a new action.

Under the circumstances, did the trial judge abuse his discretion in sustaining the motion? There was nothing to indicate newly discovered evidence or any other ground for granting defendant a new trial, or any misconduct or fraud vitiating the proceedings. The parties tried the cause and submitted it to the court. Further evidence or argument or information was not requested by the court.

What remained was judicial action. The rights and obligations of the parties under the pleadings and evidence were ready for judgment. The stress and burden of the trial had been borne by the litigants. Plaintiff was entitled to the fruits of the trial and of a victory clearly won. It does not seem just or equitable to deprive her of that right under the circumstances. To permit defendant to harass her with another action and trial on the same issues appears to be unjust. There is more to the controversy than the rights and obligations of the parties. The public burden of a second trial and the best interests of the child should have been considered. The mother is adjudged to be a fit person to have the custody of her infant daughter. The menace of renewed charges that the mother treated her husband with extreme cruelty and the prospect of another public trial for a divorce are not calculated to promote the best interests of the child when mingling with other children at school and elsewhere. The hope of a reconciliation is not a sufficient ground for the denial of relief to which the wife was entitled, under the pleadings and the evidence, or a justification for the discretion exercised. After a desertion of three years, after defendant made his unfounded charges of extreme cruelty for the purpose of a divorce, and after a protracted trial, there should have been a more substantial reason than that given for permitting relitigation of the same issues in the hope of a reconciliation.

The United States circuit court of appeals, eighth circuit, commented on the Nebraska statute and the decisions relating to the right of dismissal and said:

"In our opinion the rule prevailing in Nebraska is not obscure. The privilege of dismissal without prejudice is not demandable as of right after a case has been submitted to court or jury, whether upon demurrer to the evidence, motion for directed verdict, or generally upon conclusion of the evidence; but may be granted by the court in the exercise of its discretion; and, in the absence of a clear showing of abuse of discretion, such action

should be sustained. Without doubt the courts should be alert to prevent defeated litigants from arbitrarily abandoning their cases for the obvious purpose of suing again, thus harassing defendants, and committing unwarranted waste of public money; but the court's discretion in the premises is essential to the rights of both parties." *Iowa-Nebraska Light & Power Co. v. Daniels,* 63 Fed. (2d) 322.

A ruling that involves "judicial discretion" is subject to review. In appellate proceedings an abuse of discretion by the trial judge does not imply improper motive, wrongful purpose, prejudice, partiality or intentional wrong. The supreme court of Iowa said:

"If the reasons given by the court for its action are clearly untenable or unreasonable, if its action clearly amounts to a denial of justice, if clearly against justice or conscience, reason and evidence, it has abused its discretion." *State v. District Court,* 213 Ia. 822, 80 A. L. R. 339.

What is meant by judicial "discretion" is indicated by the following excerpt from an opinion by the supreme court of the United States:

"The term 'discretion' denotes the absence of a hard and fast rule. *The Styria v. Morgan,* 186 U. S. 1, 9. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes v. Green,* 282 U. S. 531, 541.

This is also the rule of the Massachusetts decisions. *Commonwealth v. Gallo,* 275 Mass. 320. In *Bee Bldg. Co. v. Dalton,* 68 Neb. 38, Chief Justice Sullivan quoted with approval the following language from a Kansas case:

"Where a demurrer to the evidence is sustained, the case is ready for judgment. It has been finally submitted to the court, and the plaintiff has no more right to dismiss then than he has after a verdict is returned. The

case is decided, and the plaintiff has no right to avoid that decision by a dismissal." *St. Joseph & D. C. R. Co. v. Dryden,* 17 Kan. 278.

In the same Nebraska opinion Chief Justice Sullivan said:

"To permit a party to dismiss under such circumstances is, in substance, to grant him a new trial after he has been fairly defeated and to deprive his adversary of the fruits of a fairly won victory. It is contrary to good sense and sound policy to allow a party to take his case from one court to another until fortune favors him with a judge who is willing to accept his view of the law or his construction of the evidence. * * * One who is defending against a claim which he believes to be unjust ought not to be subjected to the expense of litigation which settles nothing. And since he is not permitted to choose another forum when it is discovered that the court is against him, it is manifestly unfair to give the plaintiff an unlimited freedom of choice. The tax-paying public, too, have rights which it may be presumed the legislature took into account in adopting section 430. (Comp. St. 1929, sec. 20-601.) It is, of course, entirely proper that courts should be maintained at public expense to hear and determine all controversies that may be submitted to them, but it is no part of the business of the state in administering justice to provide for sham trials, or to maintain courts for experimental investigation. Indeed, it would be a reproach to our judicial system to permit a defeated litigant to abandon his case and sue again, thus harassing the defendant and wasting money raised by taxation for public purposes."

In view of the established facts and the law applicable thereto, the conclusion is that there was a clear abuse of discretion on the part of the district court in sustaining the motion for a dismissal of the cross-petition without prejudice to a new action. The judgment from which the appeal was taken is therefore modified to dismiss the cross-action of defendant with prejudice to a future action

for a divorce on the grounds alleged in his cross-petition herein. Defendant is required to pay the costs of the appeal and a fee of $100 for the services of counsel for plaintiff in the supreme court.

JUDGMENT ACCORDINGLY.