LEON A. WILLIE, APPELLEE, v. CONSTANCE D. WILLIE, APPELLANT.

93 N. W. 2d 501

Filed December 12, 1958. No. 34420.

*Chambers, Holland, Dudgeon & Hastings,* for appellant.

*Beynon & Hecht,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

CHAPPELL, J.

On December 22, 1956, plaintiff, Leon A. Willie, a major in the United States Army and an alleged resident of Lincoln, Lancaster County, Nebraska, filed a petition for an absolute divorce from defendant, Constance D. Willie. The alleged grounds for such relief were extreme cruelty and misconduct of defendant, which need not be stated here. A summons issued and on January 3, 1957, same was personally served on defendant in El Paso County, Colorado. Answer day was

on or before January 28, 1957. Thereafter, on January 29, 1957, defendant's attorneys entered a written general appearance for defendant, but thereafter filed no other pleading or answer although on February 4, 1957, and again on February 13, 1957, they were duly notified by plaintiff's attorneys that the cause was set for trial on February 20, 1957.

After a hearing on that date whereat evidence was adduced, a decree was rendered which found and adjudged that due and proper service of summons had been made on defendant; that the court had jurisdiction of the parties and cause; that defendant's attorneys had entered their appearance on behalf of defendant and were notified of the hearing but obtained no additional time to plead; and that defendant and her attorneys failed to answer, plead, or otherwise appear, so defendant was in default and same was entered against her. The judgment then found generally for plaintiff and against defendant; that the allegations of plaintiff's petition were true; that defendant had been guilty of extreme cruelty and misconduct as alleged; and that plaintiff was entitled to an absolute divorce from defendant and such a divorce was granted to plaintiff.

Thereafter, on March 5, 1957, the day after plaintiff had left Lincoln for required overseas army duty in Japan, defendant filed a motion to set aside the decree, supported by her affidavit subscribed and sworn to before a notary public in Lancaster County on March 4, 1957. The alleged grounds therefor were that the parties were married in Lincoln on November 21, 1940, but for the last 3 years they had resided in Colorado Springs, Colorado, with the intention of making it their permanent residence, and plaintiff was not a resident of Lincoln. Thus the court was allegedly without jurisdiction to render the decree, and same was a nullity. Defendant also alleged that she had intended to resist the action but had no notice that the same was set for hearing, and plaintiff's divorce was obtained by fraud.

After a hearing on defendant's motion, whereat evidence was adduced by the parties, her motion was overruled, and she appealed, assigning that: (1) The trial court erred in finding that plaintiff was a resident of the State of Nebraska and that the court had jurisdiction to grant plaintiff a divorce; and (2) in any event the trial court erred in refusing to set aside the decree of divorce and grant defendant an opportunity to defend and have a hearing on the merits. We do not sustain the assignments.

At the outset it should be said that the bill of exceptions presented here contains not only the evidence, in affidavit and exhibit form, adduced by the parties on defendant's motion to set aside the decree, but also all the evidence orally adduced by plaintiff at the hearing on February 20, 1957, which was offered in evidence, and disclosed the basis upon which plaintiff was granted an absolute divorce. In that connection, the latter evidence, properly corroborated, was amply sufficient to sustain a conclusion that plaintiff had continuously been a legal resident of Lincoln since he entered military service in 1940; that, holding the rank of major, he was still in that service; and that defendant had been guilty of extreme cruelty and misconduct during the last 10 years, which destroyed the objects of matrimony, impaired plaintiff's health, three times imperiled his career as an army officer, and entitled him to a divorce. It also disclosed that the parties had no children; that since the marriage they had accumulated some expensive household furniture and equipment, a car, and an equity of about five thousand dollars in a house in Colorado Springs; that defendant was able-bodied and able to work; that she owned 180 acres of land in northeastern Colorado, and was living with her mother in Colorado Springs; and that defendant was an only child whose widowed mother had personal assets worth between three hundred and five hundred thousand dollars, plus real property in Colorado and Nebraska. Also, plain-

tiff and defendant had a joint bank account from which plaintiff had removed his name but had withdrawn none of the account, which account, at the hearing on defendant's motion, was shown to have contained six hundred to eight hundred dollars. Such record also shows that plaintiff offered to pay all costs including fees for defendant's attorney; to turn over his interest in the house to plaintiff and her mother, who had some money invested in it; and to give defendant all the household furniture and equipment, but plaintiff desired to keep only his personal effects, the car, and a tape recorder used in his business.

At the hearing on defendant's motion, she offered her own second affidavit, sworn to and acknowledged before a notary public in Lancaster County on March 8, 1957. Therein, so far as important here, she deposed substantially as follows: That she was 35 years old and presently a resident at 618 Salano Drive in Colorado Springs, Colorado; that she was married to plaintiff in Lincoln on November 21, 1940, but shortly thereafter plaintiff went on active duty in the National Guard and was stationed at various places in the United States until sent overseas in 1944; and that upon his return in 1945 he was stationed at various places during which time defendant accompanied and lived with plaintiff where opportunity presented, but that since September 1954, plaintiff had been stationed at Fort Carson, Colorado, and the parties resided in Colorado Springs. Defendant deposed that in the spring of 1956 the parties decided and plaintiff determined *"that they would make their permanent home or residence in Colorado Springs upon plaintiff's release from the service and retirement in 1960";* that accordingly, in May 1956, they started the construction of a residence at 618 Salano Drive in Colorado Springs and moved into it in September 1956, intending to make their permanent residence there, where plaintiff lived about 1½ months until in October 1956, when he was ordered to temporary duty in Washington,

D. C.; and that since that time defendant had not seen plaintiff and had heard from him but twice. (Italics supplied.) Defendant also deposed that plaintiff had not actually lived in Lincoln since 1940 except for occasional visits with relatives there; that the parties had made their home in rented properties wherever plaintiff was stationed until the decision was made to make Colorado Springs their home as aforesaid; and that on December 22, 1956, plaintiff was a resident of Colorado Springs. She also deposed that by the first part of January 1957, their joint bank account was exhausted and plaintiff had refused to contribute to her support, and she had no other source of income. Thus, she was unable to make payments on their home, and was unable to sell or mortgage same because title thereto was in both parties and such property, as well as some mortgaged household furniture and equipment, was subject to foreclosure and loss. She further deposed that the parties owned a 1956 Ford station wagon which plaintiff had taken and retained, leaving defendant without any means of transportation. Defendant then denied that she had been guilty of extreme cruelty or misconduct; and deposed that when summons was served upon her she immediately consulted with her named attorneys in Colorado Springs and instructed them to resist the action, but they did not inform her and she had no knowledge that the action was to be heard February 20, 1957, or that plaintiff had been granted a divorce until she read about it in a Lincoln paper about February 28, 1957, and that upon advising her attorneys of that fact, they disclaimed any knowledge of it and advised her to come to Lincoln immediately and obtain local counsel.

In that connection, plaintiff offered an affidavit of one of his attorneys which deposed that his other attorney appeared on February 4, 1957, and set the case for trial February 20, 1957. Immediately on February 4, 1957, that attorney called one of defendant's attorneys by long distance telephone, discussed the case with him in

the presence of affiant, and told defendant's attorney that the case had been set for trial on February 20, 1957. A memorandum of the Lincoln Telephone & Telegraph Co., dated February 4, 1957, and marked exhibit A, was attached to the affidavit and made a part thereof, which verified that such a call had been made. Also, on February 4, 1957, that attorney for plaintiff wrote defendant's attorneys a letter. A copy thereof, marked exhibit B, was attached to and made a part of the affidavit. That letter also informed them that the case had been set for trial February 20, 1957, at 9 a. m. Therein plaintiff also offered to pay all costs, including all attorneys' fees of defendant's attorneys; to turn over to defendant and her mother the house they were living in; and to give defendant all of their furniture and equipment and only retain the car, a tape recorder, and plaintiff's personal effects. It informed them that defendant had access to between six hundred and eight hundred dollars in their joint bank account from which plaintiff had withdrawn only his name. Also, the affiant aforesaid deposed that, having received no reply to the letter to defendant's attorneys of February 4, 1957, one of them was again called by long distance telephone on February 13, 1957, whereat defendant's attorney acknowledged receiving the letter of February 4, 1957, and was again informed that the case was set for trial February 20, 1957. He was then asked whether defendant intended to make further appearance, and defendant's attorney said that he did not know, but if such further appearance was contemplated either defendant or local attorneys employed by defendant would confer with affiant on or before the following Monday, February 18, 1957. However, plaintiff's attorneys received no further communication from defendant or any person in her behalf prior to February 20, 1957, so they proceeded to trial on default. A memorandum of the Lincoln Telephone & Telegraph Co., marked exhibit C, and attached to and made a part of the affidavit, also veri-

fied that such a call had been made by plaintiff's attorney. We also deem it passing strange and important that defendant was in Lincoln prior to March 4, 1957, where her motion and affidavit were prepared on that date seeking to set aside the decree, but same were not filed until after plaintiff left for required overseas army duty in Japan.

The affidavit of only one attorney for defendant was offered by her. He deposed that defendant brought the summons served upon her to his office and that he discussed the matter with defendant and with plaintiff's attorneys, and knew that the cause had been set for hearing, but at that time defendant could not afford to travel to Nebraska and be present at the hearing or employ local counsel, so he requested additional time for her to do so. He stated that due to inadvertence of their office, defendant was not advised of the hearing, but several days thereafter defendant journeyed to Nebraska and requested that the default should be set aside. However, he stated that throughout the course of negotiations, the attorneys for plaintiff did not at any time deceive or attempt to deceive affiant as to dates and times of hearing, and that he advised defendant that it would be impossible for his office to represent her in Nebraska, but defendant was attempting to employ local counsel, and he advised plaintiff's attorneys that the matter of jurisdiction was going to be contested and *to the best of his knowledge* informed them of defendant's financial circumstances. (Italics supplied.)

The affidavit of defendant's mother, offered by defendant, was similar in material respects with that made by defendant. She also deposed that she was a widow; that defendant was her only child; and that she had sufficient funds and income to support herself but was unable to assume the obligation and support of defendant, who had not been supported by plaintiff since the divorce action was filed. She also said that defendant had been a good, dutiful wife, and was not guilty

of misconduct as claimed by plaintiff, but that there was evidence that plaintiff had been guilty of misconduct.

An affidavit of an army officer offered by defendant deposed that he met plaintiff in May 1956, whereat plaintiff indicated that he intended to settle in Colorado Springs *"after retirement."* (Italics supplied.) In another affidavit, offered by defendant, the affiant refers to "Major Leon A. Willie claiming Colorado Springs, Colorado *as his retirement town."* Affiant then deposes and says: "During an interview to establish the qualifications of Major Willie and family for a real estate loan I was told that he was making Colorado Springs his permanent home." (Italics supplied.) That statement also could as well refer to the future, and was purely hearsay without disclosing who gave him the information.

In another affidavit offered by defendant, the affiant, an army officer, deposed that he was a fellow officer with plaintiff at Fort Carson, Colorado, in 1954 and 1955, where plaintiff had indicated a *"personal desire to locate his permanent residency"* in Colorado Springs. (Italics supplied.) Affiant also deposed that while he was acting in a civilian capacity as a realty salesman, he had sold a residence known as 618 Salano Drive in Colorado Springs to plaintiff and defendant, which was contrary to statements made by defendant and her mother that they had constructed the residence.

Defendant offered a letter dated April 8, 1957, and sent to defendant's local attorneys by an army officer, which said that a review of the army personnel records of plaintiff failed to indicate further information than that indicated in his certificate of March 19, 1957; that change of address cards were not filed in the personnel file of an officer; and that he recommended that further correspondence be directed to "The Adjutant General, Department of the Army, Washington 25, D. C." In that connection, the record does not disclose that any such further correspondence had been had by defendant or her attorneys. Be that as it may, the aforesaid

certificate of that same army officer, dated March 19, 1957, and offered by plaintiff, certified that he had custody of plaintiff's personnel records and had examined his official file, which revealed that plaintiff entered federal service from Nebraska, and his permanent home address was indicated as 2535 Washington Street, Lincoln, Nebraska.

In that respect, the affidavit of plaintiff's sister, who lives at 2535 Washington Street in Lincoln, was offered by plaintiff. She deposed that plaintiff entered the army in 1941 while a resident of Lincoln; that he had been in such service continuously since that time at various stations in this and foreign countries; and that plaintiff had advised her that he intended to make the army his life career. She deposed, and it is not disputed, that during such period he frequently had mail delivered to him, including correspondence from military authorities, at 2535 Washington Street in Lincoln; that plaintiff always kept her advised of his whereabouts and instructed her to forward all such mail to him; that during such period plaintiff had clothing and personal effects at her home aforesaid as his residence; and that he never informed her or indicated any intention to change his residence. In that connection, it will also be remembered that defendant never contended otherwise until 1956, and then that plaintiff's intention was not to change his residence until his release and retirement in 1960.

In another affidavit offered by defendant, the affiant deposed that she had known plaintiff and defendant personally and socially for 20 years, and that during the early summer of 1956, while their home was under construction in Colorado Springs, plaintiff stated that he had definitely decided to make his permanent home there *"upon his retirement from the Army in 1960,"* and that he had no desire or intention to ever return to Nebraska to live. (Italics supplied.)

Plaintiff's affidavit, made in Oakland, California, on

March 20, 1957, and offered by him, deposed that in 1934, he and his family returned to Lincoln for business reasons, where he remained until he entered the service of the National Guard December 23, 1940; and that he was married to defendant in Lincoln on November 21, 1940. During his service he was stationed in various states and countries, but always listed Lincoln as his legal address, and his military records so listed that address. In 1956, while stationed at Fort Carson, he received orders transferring him to an overseas station, and because defendant could not accompany him, they purchased a home in Colorado Springs where defendant could live during his overseas tour of duty. He is tentatively scheduled to retire from army service January 31, 1961, and had discussed many areas that appealed to him for future residence, among which was Colorado, depending on where he could find employment. However, he had no offers of employment except by Standard Oil of New Jersey, which offered him a position in Turkey, but he had not committed himself at this time. Since his mother and two sisters also resided in Lincoln and he had numerous acquaintances there, he intended to return there upon retiring if he could obtain employment.

Another affidavit of a man who had known plaintiff for over 25 years was offered by plaintiff. He deposed that plaintiff had made his home in Lincoln for several years before he entered the army, and had since returned many times when duty permitted; and that while doing so, plaintiff expressed his happiness at being able to return to what he termed " 'my home' " and expressed an intention to return to Lincoln to live upon his discharge from the United States Army.

Another affidavit of a man who had known plaintiff for over 20 years and was a close personal friend, was offered by plaintiff. Such affiant deposed that since plaintiff entered the army, he had returned to Lincoln on leave from time to time, and on such occasions had

indicated that he considered Lincoln his permanent home and intended to return there to live and work when discharged from the army.

In Burns v. Burns, 145 Neb. 213, 15 N. W. 2d 753, referring to residence requirements in divorce cases, we held: "If requirements for residence within the state have been complied with, then the district court has jurisdiction to hear and determine an action for divorce in any county in the state where the parties, or one of them, reside.

"It is elementary and it is the universal rule that residence in a community is determined by the intention of the parties."

Also, as held in Wray v. Wray, 149 Neb. 376, 31 N. W. 2d 228: "A wife is not prevented from having a residence separate and apart from that maintained by her husband."

In Means v. Means, 145 Neb. 441, 17 N. W. 2d 1, we held: "A person does not change his legal residence by removal to a new dwelling place without an intention to make the new dwelling place his home.

"One's legal residence is where he has his established home, and to which, when absent, he intends to return. To effect a change there must not only be a change of residence, but an intention to permanently abandon the former residence.

"The residence of a person in the military service of his country is in no way affected by such service. He does not abandon or lose the residence he had when he entered such service by being required to live at certain army posts in other states or countries."

In 17 Am. Jur., Divorce and Separation, § 286, p. 461, citing numerous authorities, it is said: "A change of residence for divorce purposes is not effected merely by going to live in another place; an essential element of a change of residence is intention, * * * which has been variously defined as the intent to reside in the new place permanently or indefinitely, or to make the new place

one's permanent home, or as the absence of an intention to live elsewhere. * * * The intent must be to 'do it now'; there must be an intent, while residing in a new place, to make such place one's home as of the present moment rather than in the future." See, also, Restatement, Conflict of Laws, § 18, p. 36, § 19, p. 38, § 20, p. 39.

Also, in 17 Am. Jur., Divorce and Separation, § 298, p. 472, dealing with the acquisition of a new residence by members of the armed forces, and citing numerous authorities, it is said: "The intent must be a present intent; the mere intention to take up residence within the state upon being released from the service will not suffice."

Also, in 17 Am. Jur., Divorce and Separation, § 489, p. 590, citing numerous authorities, it is said: "In an action to set aside a divorce decree, the party attacking the decree should, in his pleadings, set forth the particular grounds upon which the decree is assailed and not attack it by broad, general, and indiscriminate charges. A general allegation that the party complaining did not have an opportunity to meet the case made by the adversary is not sufficient. The burden of proving the ground for vacating a divorce decree rests upon the one who seeks such relief. Thus, the petitioner or moving party has the burden of proving the fraud charged, including the falsity of allegations of domicil within the divorce state * * *."

Further, as said in Annotation, 6 A. L. R. 2d 611, citing numerous authorities: "In any event, in cases in which a default divorce decree is sought to be vacated on the ground of a false allegation of the plaintiff's domicil or residence in the state, the presumption is in favor of the existence of every essential fact necessary for the rendition of the decree, and of the jurisdiction of a court of general jurisdiction, and the applicant for vacation of the divorce decree bears the burden of proving the falseness of the allegation of domicil or

residence clearly and affirmatively by a preponderance of the evidence, or by evidence sufficient to satisfy the court that a fraud has been perpetrated, and where this burden is not sustained, a refusal to vacate the decree is proper."

In the light of the foregoing rules and evidence, we are convinced, as was the trial court, that plaintiff's legal residence was in Lincoln, Lancaster County, Nebraska, at all times here involved. Therefore, the trial court was right when it concluded that it had jurisdiction to hear the cause and award plaintiff an absolute divorce.

We are confronted then with the question of whether or not the trial court erred in refusing to set aside the decree of divorce upon other grounds. We conclude that it did not.

With regard thereto, section 42-340, R. R. S. 1943, provides in part that: "If no such proceedings (upon appeal) have been instituted, the district court may, at any time within said six months, (after trial and decision) vacate or modify its decree * * *."

In that connection, we held in Colick v. Colick, 148 Neb. 201, 26 N. W. 2d 820, citing and relying upon Carpenter v. Carpenter, 146 Neb. 140, 18 N. W. 2d 737, that: "During that period, the control of such a decree is within the sound judicial discretion of the trial court, but good reason must be shown for setting it aside, and such action must not be permitted to produce an unconscionable result, thereby abusing or misusing the judicial process.

"What constitutes good reason for setting aside such a decree or what constitutes an unconscionable result prohibiting it depends upon the facts and circumstances of each particular case."

Also, in Roberts v. Roberts, 157 Neb. 163, 59 N. W. 2d 175, citing and relying upon Reeker v. Reeker, 152 Neb. 390, 41 N. W. 2d 231, and Pittman v. Pittman, 148 Neb. 864, 29 N. W. 2d 790, we held: "Where a default

has been regularly entered it is largely within the discretion of the trial court to say whether the defendant shall be permitted to come in afterwards and make his defense and, unless an abuse of discretion be made to appear, this court will not interfere.

"It is the spirit and policy of the law to give every party an opportunity to prosecute or defend his case in court and courts will never deny such right except for the fault or gross laches of such party or his authorized attorney.

"By section 42-340, R. R. S. 1943, either party to a divorce action may within 6 months of the date of entry of decree make application to have the decree set aside or modified.

"The right to vacate or modify a decree of divorce within 6 months is not absolute but must be exercised within a sound judicial discretion." See, also, Arent v. Arent, 159 Neb. 347, 66 N. W. 2d 813.

Such rules control disposition of defendant's second assignment of error. In that connection it was admitted that defendant was personally served with summons and immediately consulted and employed attorneys who entered a written general appearance for her. Admittedly, they were fully, fairly, and timely advised by plaintiff's attorneys upon more than one occasion both orally and in writing that the case was set for trial February 20, 1957, yet they failed and neglected to further plead or answer, and it cannot be logically said that defendant had no knowledge of that fact or was financially unable or did not have ample opportunity to have avoided a default. Her attorneys were advised that defendant had sole access to their joint bank account of from six hundred to eight hundred dollars in Colorado Springs. They were advised, and it was not disputed, that the parties had accumulated an equity of about five thousand dollars in a house in Colorado Springs, some valuable household furniture and equipment, and a car and tape recorder used by plaintiff in

his business. They were advised that plaintiff was willing to pay all costs, including the fees of defendant's attorneys, and turn over all their property to defendant except the car in plaintiff's name, the tape recorder, and plaintiff's personal effects. Also, plaintiff has at all times tendered such performance. In that situation, defendant defaulted and plaintiff was granted an absolute divorce without any fraudulent procurement.

Without dispute, defendant was a young, able-bodied woman, who was able to work. She had no children and was an only child of a widow living in the same city who owned very valuable personal property and lands in Colorado and Nebraska. Defendant came to Lincoln and employed local attorneys who prepared her motion to set aside the decree, supported by defendant's affidavit dated March 4, 1957, yet she did not file same until plaintiff had left Lincoln for an assignment to overseas military duty in Japan, which would delay any hearing in the cause on the merits until his uncertain return, and permit defendant in the meantime to profit by his absence and cause plaintiff endless trouble and embarrassment, without opportunity to properly defend his interlocutory or final rights. To set the decree aside would produce an unconscionable result by giving defendant an undue advantage because of circumstances caused by her own willful design, or the fault or gross laches of herself and her attorneys in Colorado Springs, and permit an abuse or misuse of the judicial process. Further, the evidence adduced by plaintiff at the hearing on February 20, 1957, which was amply corroborated and offered in evidence here, discloses without question that defendant was guilty of extreme cruelty and misconduct over a period of years, which impaired plaintiff's health, three times imperiled his career as an army officer, and destroyed the objects of matrimony. Whether defendant had any defense would be merely in the realm of conjecture and a speculative conclusion without any factual foundation. We

conclude that the trial court did not abuse its discretion in refusing to set aside the decree.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant.

AFFIRMED.

WENKE, J., participating on briefs.