STATE OF NEBRASKA EX REL. MERLE RITTENHOUSE ET AL., APPELLEES, V. DUANE NEWMAN ET AL., APPELLANTS. STATE OF NEBRASKA EX REL. GERALD BAIRN ET AL., APPELLEES, V. DUANE NEWMAN ET AL., APPELLANTS. STATE OF NEBRASKA EX REL. ORVIN L. LAKE ET AL., APPELLEES, V. DUANE NEWMAN ET AL., APPELLANTS.

204 N. W. 2d 372

Filed February 16, 1973.   Nos. 38584, 38585, 38586.

Atkins, Ferguson, Nichols & Hahn and Dennis M. Coll, for appellants.

Richards & Richards, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The district court held that the parents of the school children involved were legal residents of School District No. 131 and issued writs of mandamus requiring the appellants to readmit them to school. On appeals to this court, we affirm the judgments of the district court in issuing the writs and readmitting the children to the school in School District No. 131.

Appellants' first contention on these appeals is that mandamus was not the proper remedy in these actions. They contend that the determination of the residency of the students is not ministerial in character, involved discretion, and that the school board was acting in a quasi-judicial capacity. Therefore, they assert, under boilerplate law, that mandamus cannot be used as a remedy to compel the reinstatement of the appellees' children. We are firmly of the opinion that the duties of a board of education with respect to the admittance of students is of a ministerial, and not a discretionary, nature. It is true that the gray area between a clearly ministerial and a clearly quasi-judicial discretionary action is sometimes difficult to find. We have consistently held that an act is nonetheless ministerial because the person performing it or the officer who is

obligated to perform it, may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act. State ex rel. McIlvain v. City of Falls City, 177 Neb. 677, 131 N. W. 2d 93; Little v. Board of County Commissioners, 179 Neb. 655, 140 N. W. 2d 1. One of the conditions the board of education must determine prior to admission is that of residency. This act, multitudinously performed over the State of Nebraska, is not designed or intended to be discretionary in nature. It is simply a condition and once having been determined, requires the board of education to either admit or not admit such child to school. We feel it comes squarely within the abstract definition set out in Larson v. Marsh, 144 Neb. 644, 14 N. W. 2d 189, where it was said: "A ministerial act has been defined as one performed in response to a duty which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." See, also, State ex rel. Line v. Kuhlman, 167 Neb. 674, 94 N. W. 2d 373; Mekota v. State Board of Equalization & Assessment, 146 Neb. 370, 19 N. W. 2d 633.

The fact that a necessity may exist for the ascertainment, from personal knowledge, or from information derived from other sources, of those facts and conditions, such as residence, upon the existence of fulfillment of which the performance of the act becomes a clear and specific duty, does not operate to convert the act into one judicial in its nature. See Larson v. Marsh, supra.

Very close, if not controlling, is our recent holding in School Dist. No. 23 v. School Dist. No. 11, 181 Neb. 305, 148 N. W. 2d 301. In that case this court held that a county superintendent of schools was not required to hold a hearing under the statute requiring him to at-

tach adjoining school districts in the event there had been a change or changes in the channels of a river and the determination that not more than 20 persons of school age were residents of the district. This court said in that case: "In the present case the superintendent decided no dispute of adjudicative fact, and no statute required him to act in a judicial manner. Such orders are not reviewable by error proceedings, which are limited to orders made in the exercise of judicial functions. * * * In such circumstances collateral attack offers an adequate remedy." Consequently, we hold that the act challenged here is ministerial and nonadjudicative in nature and subject to the operation of the writ of mandamus.

Appellants further contend that there was a remedy at law available to the appellees. The answer to this contention is that the other remedies available are not adequate to afford relief upon the subject matter involved. It is clear that one who is deprived of the privileges of the public school in the district of his residence is entitled to a speedy and adequate remedy. The school children were denied admittance and to require them to pursue other remedies in this case by circuitous and dilatory action at law would in itself defeat the very purpose of an adequate remedy. See, Vermillion v. State, 78 Neb. 107, 110 N. W. 736; State ex rel. Herman v. City of Grand Island, 145 Neb. 150, 15 N. W. 2d 341.

The main question involved in this appeal is whether or not the trial court erred in finding that the appellees were legal residents of School District No. 131. It is fundamental that mandamus is a law action and that conflicts in evidence or findings of fact based thereon will not be disturbed on appeal unless clearly wrong. State ex rel. McKee v. Porter, 90 Neb. 233, 133 N. W. 189; State ex rel. Charvat v. Sage, 119 Neb. 374, 229 N. W. 118; State ex rel. Heil v. Jakubowski, 151 Neb. 471, 38 N. W. 2d 26; State ex rel. City of Grand Island

v. Union Pacific R.R. Co., 152 Neb. 772, 42 N. W. 2d 867; State ex rel. Weinberger v. Gormley, 155 Neb. 242, 51 N. W. 2d 343. This rule, applicable to mandamus proceedings, follows the general rule that this court will not disturb the findings of fact made by a trial court in a law action and sitting without a jury unless they are clearly wrong. Pester v. Amercan Family Mut. Ins. Co., 186 Neb. 793, 186 N. W. 2d 711; Highway Equipment & Supply Co. v. Jones, 182 Neb. 234, 153 N. W. 2d 859.

We therefore briefly review the evidence to find out if it supports the trial judge's finding of residence in these actions. In case No. 38584 (Rittenhouses) the record shows that the Rittenhouses moved from their farm home to a rented residence in Oshkosh (School District No. 131) 3 years prior to the time of hearing in the district court. Both Mr. and Mrs. Rittenhouse are employed at the Midwec Corporation in Oshkosh, although they maintain a farming and ranching operation on their land some 32½ miles from Oshkosh. They registered to vote in Oshkosh 3 years ago, registered two of their three vehicles in the Oshkosh district, they eat and sleep in their Oshkosh residence, and testified unequivocally that it was their intention to have Oshkosh as their residence and that they consider Oshkosh their home. On the other hand the appellants introduced evidence showing that the Rittenhouses built a new house on their land in 1965 and that they spend some weekends and summers at this ranch house, and that their farm vehicle used on the ranch was registered in the farm district. The evidence also shows that they continue their employment at Midwec Corporation in Oshkosh during the summer months and commute back and forth.

In case No. 38585 (Bairns) the record shows that in August 1971 the Bairns moved from a farmhouse on land which they rent to a rented house in Oshkosh. They are engaged in a farming and ranching operation

on the above-mentioned rented land and have not sub-leased the house located there because it was not theirs to sublease. The Bairns also registered to vote in Oshkosh and licensed their car there. The undisputed testimony is that they eat and sleep in Oshkosh and both testified unequivocally that they consider it their legal residence and their home. The only evidence to the contrary is that the Bairns spend some weekends at their former ranch home. Their home in Oshkosh is furnished by themselves and they do have some furniture still located in the rented farmhouse. They also have a farm vehicle which is still registered in the farm district.

In case No. 38586 (Lakes) the evidence shows that the Lakes moved from a house on land owned by the father of Mr. Lake to a home owned by the Lakes located ½ mile west of Oshkosh on or about September 1, 1971. The Lakes continue to run a farming and milking operation for the benefit of Mr. Lake's father which is located on the father's land. The Lakes are registered to vote in Oshkosh, register their personal vehicle in Oshkosh, and testified that Oshkosh is their legal residence and consider Oshkosh to be their home.

From the above brief recital of some of the pertinent evidence in the case, it is obvious there is ample evidence, if not a clear preponderance of the evidence, to support the trial court's finding that the appellees intended their legal residences and homes to be in Oshkosh; that they have previously changed their residences; and that the appellees did, in fact, intend to abandon their former residences and make Oshkosh their homes. The findings and decisions of the trial court are amply supported by the evidence under the applicable rules of law that this court has stated in Willie v. Willie, 167 Neb. 449, 93 N. W. 2d 501; Means v. Means, 145 Neb. 441, 17 N. W. 2d 1; In re Estate of Meyers, 137 Neb. 60, 288 N. W. 35; State ex rel. Vale v. School Dist. of City of Superior, 55 Neb. 317, 75 N.

W. 855. We observe in passing that the act of registering to vote has been considered by our court to be persuasive of the fact that a person considered such place his legal residence. In re Estate of Meyers, *supra*. We also observe that the testimony of the appellees themselves as to intention, although subjective in nature, is entitled to great weight. It is significant that in three of the above-cited cases, Willie v. Willie, *supra,* Means v. Means, *supra,* and In re Estate of Meyers, *supra,* this court held that the stated intent of the party to the effect that his former home was *not* abandoned prevails. We also observe that the motivation of appellees in changing their legal residency is immaterial so long as they have the requisite intent to establish a new residence and abandon their former homes. 25 Am. Jur. 2d, Domicile, § 24, p. 18.

The trial court heard all the testimony, observed the witnesses and their manner of testifying, and accepted one version of the facts rather than the other. We think this is especially important when the fundamental issue involved is to ascertain the existence or nonexistence of the necessarily subjective intent to maintain a permanent residence. It is abundantly clear from the facts we have recited and the law applicable that the findings of fact of the trial court were amply supported by the evidence and fall far short of being clearly wrong.

We therefore hold that the writs of mandamus were properly issued in these cases as to all appellees and that the trial court's determination that appellees are legal residents of School District No. 131 is correct. We affirm the judgment of the district court.

AFFIRMED.