JEANNE LOUISE YOUNKIN, APPELLEE, V. GARY MARTIN YOUNKIN, APPELLANT.
375 N.W.2d 894

Filed November 1, 1985.   No. 84-049.

Wesley C. Mues of Knapp, Mues & Beavers, for appellant.

Michael R. Snyder and Stephen G. Lowe, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

Shanahan, J.

The district court for Kearney County refused to set aside or modify its decree dissolving the marriage of Jeanne and Gary Younkin. Gary appeals and contends the district court erred in refusing to set aside its decree and denying discovery directed toward determining paternity of an unborn child for whom the court ordered Gary's payment of child support. We affirm in part and in part reverse and remand with direction.

On July 4, 1980, Jeanne and Gary Younkin married. On June 14, 1982, Jeanne filed a petition for dissolution of marriage and alleged, among other things, existence of marital property and her anticipated delivery of Gary's unborn child expected in October. Trial occurred on August 19, 1982.

Jeanne testified about her employment as an accountant; her income and expenses, including probable cost of prenatal and maternity care; marital property and its value, as well as property possessed by the parties before marriage; debts; the expected birth of Gary's child on October 7; and the absence of any health and accident insurance supplying maternity coverage.

Gary did not supply any evidence pertaining to Jeanne's pregnancy or the paternity of Jeanne's unborn child. Gary's evidence, generally, related to the value of property, real and personal, affected by the dissolution proceedings and his compensation received from a farm partnership conducted with his father and brother.

Trial concluded without rendition of judgment on August 19. Nevertheless, on September 7 Jeanne and Gary separately filed a motion for new trial.

On February 4, 1983, the court signed a "Decree of Dissolution" prepared by Jeanne's attorney in reference to the hearing on August 19, 1982. The decree provided: Custody of the unborn child was granted to Jeanne; Gary was required to pay child support of $350 per month and medical expenses regarding Jeanne's pregnancy and birth of the child; and Jeanne was awarded alimony in the amount of $1,000 per month from August 19 until 2 months after the birth of the child, whereupon Gary was required to pay Jeanne "lump sum alimony" of $6,000 in monthly installments of $500.

Gary filed a motion for an order nunc pro tunc on February 28, whereby the date for rendition of the judgment would be corrected in the decree, inasmuch as the court's trial docket did not contain the date on which judgment had been rendered. On February 28 Gary also filed his first motion to vacate or modify the decree and claimed the court's property division was incorrect, the costs of Jeanne's obstetrical and maternity care were "exorbitant," and child support was excessive. Gary requested modification of the decree to award him some 144 items of personal property, described in a 7-page exhibit appended to his motion. Personal property sought by Gary ranged from firearms to fishing paraphernalia and included sundry items such as sheets of plywood, a box of hinges, two or three pints of varnish, one black dress shoe, quiche pans, two corkscrews (one wooden and one Italian metal), and a portable dog kennel.

On April 7 the court overruled "the Motion for New Trial." Presumably, that order related to the separate motions filed by Jeanne and Gary in September 1982, the only motions for new trial shown in the record to be pending at April 7.

Gary filed a second motion to vacate or modify the decree on April 19 and alleged that Jeanne had given birth to a child in September 1982; that after the child's birth, Gary had become "aware of factors which lead [Gary] to believe that he is not the father of said minor child"; and that the decree should be modified to exonerate Gary from payment of child support and medical expenses concerning Jeanne's pregnancy and the birth of her child. Also, on April 19 Gary filed a motion seeking a blood test and related tests of Jeanne and her child to determine whether Gary was the father of Jeanne's child. Pursuant to Rule 37(a)(2), Nebraska Discovery Rules (rev. 1983), on May 31 Gary filed a "Motion for Order Compelling Discovery," namely, production of Jeanne's medical records concerning her pregnancy and postnatal care, because Jeanne had failed to produce the requested documents after Gary had served a formal "Request for Production" on April 18. Jeanne had not sought a protective order authorized by Rule 26(c) of the Nebraska Discovery Rules. Gary alleged that the documents sought were relevant to the paternity issue raised in his second

motion to vacate.

At a hearing on September 1 the court sustained Gary's motion for an order nunc pro tunc and amended the decree of dissolution "to reflect the date of rendition thereof as February 4, 1983 rather than August 19, 1982." At this same hearing the court overruled Gary's motions (blood test and production of documents), and then made the following findings and order:

> [The court] shall not receive any evidence in support of respondent's Motion to Vacate or Modify Decree and respondent's Motion to Vacate and Modify, both filed herein within the six-month period from the date of rendition of this Court's Decree of February 4, 1983, *for the reason that it is the opinion of this Court that the taking of such evidence is discretionary with the Court* and that said Motions do not justify the receipt of any such evidence and should be overruled. The Court, however, upon stipulation of petitioner's counsel, hereby grants to respondent the option to submit to the Court, for the record, a general written offer of proof in support of said Motions with a copy of said offer to be served upon petitioner's attorney, provided that the evidence so offered shall not be received by the Court upon petitioner's objection to said offer, which objection petitioner hereby makes in advance, for the record, and which objection the Court hereby sustains.

(Emphasis supplied.)

After the order nunc pro tunc correcting the date judgment was rendered, Gary, in his motion filed September 12, sought a new trial on account of the court's actions in disposing of Gary's motion to vacate or modify the decree of dissolution.

On November 7, 1983, Gary filed a "Statement of Intended Proof in Support of Motion to Vacate or Modify Decree." In such statement Gary generally expressed displeasure with the court's division of property. Gary further alleged that the child was born on September 18, 1982, and that the medical expenses for Jeanne's maternity care had been estimated to be $1,350, whereas actual expenses were $6,500. Neither Gary's motion nor his statement indicates that Jeanne's pregnancy was less than full term or that any feature of the child's birth was other

than normal. Gary offered to prove that the child born on September 18, 1982, "is not his child"; that Jeanne had told Gary that the child would be born in the middle of October 1982, but the child was born earlier; and that Gary had "facts which supported his contention that [the child] may not be his child." According to the offer of proof, the parties had separated until "nearly the end of December, 1981," when the parties "cohabitated for a period of approximately one month."

When the district court overruled Gary's motion for new trial, Gary appealed and contends the trial court committed error: (1) In overruling the motion to vacate or modify the decree of dissolution; (2) In denying Gary the opportunity to offer evidence in support of his motion to vacate or modify the decree; and (3) In not sustaining Gary's motions for discovery (blood test and Jeanne's medical records).

> A decree dissolving a marriage shall not become final or operative until six months after the decree is rendered, except for the purpose of review by appeal, and for such purpose only the decree shall be treated as a final order as soon as rendered. . . . [T]he court may, at any time within such six months, vacate or modify its decree.

Neb. Rev. Stat. § 42-372 (Reissue 1984).

In *Willie v. Willie*, 167 Neb. 449, 462, 93 N.W.2d 501, 509 (1958), we stated:

> "[During the 6-month period] the control of such a decree is within the sound judicial discretion of the trial court, but *good reason* must be shown for setting it aside, and such action must not be permitted to produce an unconscionable result, thereby abusing or misusing the judicial process.
>
> "What constitutes *good reason* for setting aside such a decree or what constitutes an unconscionable result prohibiting it depends upon the facts and circumstances of each particular case."

(Emphasis supplied.) (Citing and relying upon *Carpenter v. Carpenter*, 146 Neb. 140, 18 N.W.2d 737 (1945).)

In *Miller v. Miller*, 190 Neb. 816, 212 N.W.2d 646 (1973), after trial, a divorce decree was rendered on July 27, 1972. The

wife, on January 24, 1973, within the statutory 6-month period, filed a motion to vacate the decree. At the hearing on the motion to vacate, evidence was adduced regarding the wife's employment at the time of trial, valuation of property affected by the proceedings, and the amount of alimony awarded to the wife. In refusing to set aside the divorce decree, this court stated at 817, 212 N.W.2d at 647:

> We are satisfied that the evidence presented in support of petitioner's motion to set aside the decree was readily available to her at the time of trial. A motion to vacate is not available to a party to supply deficiencies, if any, in the evidence adduced at the trial. Petitioner cannot be permitted to retry the issues after she has had her day in court. There must be an end to litigation.
>
> Section 42-372, . . . permitting the trial court to modify its decree within 6 months, impliedly requires a showing of good cause. The refusal of the trial court to set aside a decree of divorce within the 6-month period pending finality may not be reversed by the Supreme Court in the absence of an affirmative showing of an abuse of discretion. As we said in Zachry v. Zachry (1970), 185 Neb. 336, 175 N.W.2d 616: "The control of a divorce decree during the 6-month period pending finality is within the sound judicial discretion of the trial court."

In reviewing a trial court's ruling on a motion to vacate or modify a decree dissolving a marriage, this court examines the record to ascertain whether there has been an abuse of discretion by the trial court in disposing of such motion. See *Puetz v. Puetz*, 211 Neb. 674, 319 N.W.2d 761 (1982).

A characterization of the phrase "abuse of discretion" is found in the syllabus in *Pettegrew v. Pettegrew*, 128 Neb. 783, 260 N.W. 287 (1935):

> In the exercise of judicial discretion, there is an abuse of that power where the reasons and rulings of the court are clearly untenable and deprive a party of a substantial right clearly and fairly established and amount to a denial of justice.
>
> "Discretion," when invoked as a guide to judicial action, is a sound discretion exercised with regard to what

is right and equitable under the circumstances and the law and directed by the reason and conscience of the judge to a just result.

As we expressed in *Guggenmos v. Guggenmos*, 218 Neb. 746, 748, 359 N.W.2d 87, 90 (1984): "Although an abuse of discretion does not imply an improper motive, willful purpose, or intentional wrong, it does require the reasons or rulings of the trial judge to be clearly untenable and to deprive a party of a substantial right such as to amount to a denial of justice."

Gary's motion to vacate the decree of dissolution is couched in terms of general dissatisfaction with the court's division of property and award of alimony. There is no allegation in Gary's motion to vacate or modify which indicates that information regarding property matters and alimony was not reasonably available to Gary through pretrial discovery procedures or examination of witnesses at trial. Gary's apparent theory that Jeanne's evidence was not an exhaustive description of property to be divided in the dissolution proceedings does not provide a valid basis to vacate or modify the division of property ordered by the district court. We find nothing in Gary's motion which can be construed as an allegation of "good reason" or good cause necessary to authorize setting aside or modifying the decree dissolving the Younkin marriage. The picture painted in Gary's motion is one of his own lack of diligence or efforts to supply information to the court at the trial on August 19, 1982. The tensile strength of judicial imagination prevents our characterizing Gary's deficient diligence as "good reason" required to set aside a decree. In short, Gary alleged no facts which would constitute "good reason" or good cause to vacate the decree of dissolution disposing of property and alimony. Upon a motion containing an allegation of fact which, if true, constitutes good cause to set aside or modify a decree dissolving a marriage, the court must grant an evidentiary hearing on the motion to set aside or modify the dissolution decree. Moreover, Gary seeks to use a motion to vacate or modify a decree as a substitute for a direct appeal to review the correctness of a property division and award of alimony. Although we do not agree with the district court that, given an appropriate allegation of fact, an evidentiary hearing to set aside or modify

a decree is discretionary, we conclude in the present case that the allegations regarding property division and alimony are insufficient to raise an issue of good cause to set aside or modify a decree. Hence, the district court did not abuse its discretion in denying a hearing to vacate or modify the dissolution decree insofar as it related to property division and alimony.

The district court's ruling on the motion to vacate that part of the decree involving the child's paternity presents quite a different problem. Confronting us is a case wherein a pregnant wife, having cohabited with her husband before commencement of dissolution proceedings, has represented that her husband is the father of her child to be born, apparently consistent with conception during such cohabitation. We are not advised of any in utero tests supplying reliable information helpful in determining an unborn child's paternity.

A district court has jurisdiction to determine whether the husband is the biological father of a child to be supported as a result of the dissolution proceedings. See *Farmer v. Farmer*, 200 Neb. 308, 263 N.W.2d 664 (1978). See, also, *Timmerman v. Timmerman*, 163 Neb. 704, 81 N.W.2d 135 (1957).

In *Perkins v. Perkins*, 198 Neb. 401, 404, 253 N.W.2d 42, 45 (1977), this court held: " 'Legitimacy of children born during wedlock is presumed and this presumption may be rebutted only by clear, satisfactory, and convincing evidence and the testimony or declaration of a husband or wife is not competent to bastardize a child born during wedlock.' " (Citing and quoting from *Ford v. Ford*, 191 Neb. 548, 216 N.W.2d 176 (1974).)

By enacting § 42-372 the Nebraska Legislature has authorized an action or proceeding within 6 months to vacate or modify a previous dissolution decree. Such motion as has been filed by Gary is an action brought to set aside or modify a dissolution decree.

In resolving the question raised by Gary regarding the availability of discovery procedures to determine the issue of paternity, we refer to the Nebraska Discovery Rules, which became effective on January 1, 1983.

Rule 26(b) in part provides:

(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The question then becomes whether the blood grouping test or other scientific tests for determining paternity are within the purview of discovery authorized by the Nebraska Discovery Rules.

In pertinent part, Rule 35, Physical and Mental Examination of Persons, states:

(a) Order for Examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his or her custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The Supreme Court of Alabama, in *Leonard v. Leonard*, 360 So. 2d 710 (Ala. 1978), after noting relaxation of the common-law requirement restricting evidence to proof that a husband was incapable of procreating or was "absent beyond the realm," held: "Any evidence which is competent and which tends to show clearly and convincingly that the husband could

not be physically or biologically the father is now admissible." *Id.* at 713.

In *Brondum v. Cox*, 30 N.C. App. 35, 226 S.E.2d 193 (1976), a proceeding involving the Uniform Reciprocal Enforcement of Support Act as a civil proceeding in North Carolina, the court held that a defendant was entitled to a blood grouping test upon timely motion in which the question of paternity arises, regardless of any presumption which might arise when the child is born in wedlock.

*Balfour v. Balfour*, 413 So. 2d 1167 (Ala. Civ. App. 1982), presented a situation wherein a wife, 6 weeks after she married her husband, filed for divorce and alleged that she was pregnant with her husband's child. The husband responded by alleging that his wife had represented that he was the father of the unborn child, but the husband denied paternity. The trial court ordered that blood tests be conducted for determination of paternity. Interpreting Rule 35 of the Alabama Rules of Civil Procedure, which is virtually identical to Rule 35 of the Nebraska Discovery Rules, the court stated at 1169:

> Rule 35(a) is not limited to only personal injury actions but it is universal in its application to all civil actions. Under that rule, it is proper to order blood grouping to aid the court in a divorce action in determining whether a husband is the father of a child. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2232 (1970).
>
> . . . If blood group testings are performed, after proper predicate has been laid on the trial of the issue, evidence of the results of such tests and of the medical or scientific meaning and effect of the results of the tests is admissible in aid of the trial court in determining whether or not the husband is the natural father of a particular child.

In his motion to vacate part of the dissolution decree, Gary has disclaimed paternity of Jeanne's child. A fundamental fact necessary to sustain an order of child support is paternity by the man judicially obligated to pay such support. Likewise, questions concerning consequential liability for payment of prenatal and postnatal medical care for the mother and child will turn upon the question of the child's paternity. Medical reports concerning Jeanne's pregnancy, as well as blood tests

supplying information on the issue of paternity, appear reasonably calculated to lead to the discovery of admissible evidence. It is true that Gary, in the trial on August 19, 1982, did not raise or contest the issue of his paternity of Jeanne's unborn child. In the absence of a husband's knowledge of circumstances contradicting an allegation of paternity and without any reasonable prenatal test to ascertain paternity of a child ostensibly conceived in the marriage to be dissolved, we hesitate to impose a procedural precept requiring public repudiation of paternity, lest such ill-advised requirement be the source of immeasurable and unnecessary hurt. Jeanne's representation concerning Gary's paternity of her child and the absence of reasonable tests to provide reliable information bearing upon the issue of the paternity of an unborn child constituted good cause for the discovery sought by Gary's motion.

Although the precise factual basis for Gary's denial of paternity is not stated in his motion, and such specificity was never requested, Gary's motion does sufficiently raise the question of paternity, an issue excluded from resolution during the trial of August 19, 1982. Gary is entitled to have an evidentiary hearing on the issue of paternity. Denial of discovery under the circumstances constituted an abuse of discretion on the part of the district court.

Therefore, we affirm that part of the district court's judgment denying Gary an evidentiary hearing on matters of property and alimony disposed by the dissolution decree, but we reverse the district court's judgment denying Gary an evidentiary hearing with appropriate discovery procedure. This cause is remanded to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority opinion in this case. I do not disagree with the majority's conclusion to the effect that in a proper proceeding blood tests may be properly ordered under the provisions of Rule 26(b) of the Nebraska Discovery Rules (rev. 1983). I do not, however, believe that the trial court's order denying appellant an evidentiary hearing in

the instant case was an abuse of discretion.

Appellant's principal claim for a further evidentiary hearing is his "suspicion" that he is not the father of the child born to the appellee. The majority notes that "[a]lthough the precise factual basis for Gary's denial of paternity is not stated in his motion," that "such specificity was never requested." I am not aware of any rule of law which requires one against whom a motion to set aside a decree has been filed to file a motion to make more definite and certain. The burden is upon the party seeking to set aside the judgment to allege facts sufficient to justify relief. See *Smith v. Goodman*, 100 Neb. 284, 159 N.W. 418 (1916).

The apparent reason for appellant's failure to raise that issue earlier is his contention that the child was not born at the time the trial was held. While that may be so, the evidence is clear that there was sufficient time before the decree was entered to raise the issue, if, in fact, such an issue could have been raised. No allegations are made as to why appellant could not have moved to withdraw his rest and offer additional evidence after the child was born and before the decree was entered.

The evidence discloses that, while trial was held prior to the date the child was born on September 16, 1982, the decree was not entered until February 4, 1983, some 4½ months after the child was born. On February 28, 1983, appellant filed a motion nunc pro tunc to have the decree reflect that it was not entered until February 4, 1983. Yet he did not raise any issue about the paternity of the child. He filed a further motion on February 28, 1983, requesting a modification of the decree. That motion addressed itself to a host of minutiae involving personal property but did not seek release from responsibility for the support of the child because he was not the father. It was not until April 19, 1983, that he, for the first time, sought to be relieved of responsibility for the support of the minor child because "it is respondent's belief that he is not the father of the child." He had more than ample time to raise the issue, if indeed such an issue exists.

I believe that the allegation and the evidence are insufficient for us to say that the trial court abused its discretion in not granting appellant an evidentiary hearing based upon the

146

sketchy allegation made so late after the fact.

Appellant maintains that he was advised the child was to be born in October, when, in fact, it was born on September 16, 1982, and because he was not with the appellee until near the end of December 1981, there is the possibility that the child may not be his. I am unable to follow that argument. Assuming that he and the appellee did not have sexual relations until the last day of December 1981, the most that can be said is that the child was born perhaps 2 weeks early. And if by "nearly the end of December, 1981," it might be as early as the 23d or 24th of December, the child was born after a gestation period of 267 days. That, standing alone, appears to me to be hardly sufficient to justify saying the trial court abused its discretion in refusing to set aside the decree and granting appellant the right to engage in discovery. It may very well have been that when the case was heard by the court, appellant did not know the child was to be born on September 16, 1982, but his apparent disregard of what he now contends is such a significant factor for nearly 7 months after the child was born, coupled with his very sketchy allegations, does not, in my view, constitute an abuse of discretion by the trial court. I would have affirmed the decision of the trial court in all respects.